[No. 8550. Department Two. June 24, 1910.]

EDWARD H. HAMLIN, *Respondent*, v. JAMES W. HAMLIN et al., *Appellants*.[1]

GIFTS—CAUSA MORTIS—DELIVERY—WILLS—TESTAMENTARY DISPOSITION—TRUSTS. Where one in feeble health delivered a written assignment of a note and mortgage to the assignee, or a third person, in trust for a son and stepson, and never thereafter had any dominion or control over the same, there was a sufficient delivery to consummate a gift *casua mortis*, and the same is not void as an irregular testamentary disposition of the property.

Appeal from a judgment of the superior court for King county, Ronald, J., entered October 19, 1909, upon findings in favor of the plaintiff, after a trial before the court, in an action in equity. Affirmed.

[1]Reported in 109 Pac. 362.

*Frank S. Griffith,* for appellants.

*McClure & McClure,* for respondent.

CROW, J.—This action was commenced by Edward H. Hamlin against James W. Hamlin, Mrs. S. A. Hanna, Frank R. Atkins, and Mary C. Atkins, his wife, to establish a trust and recover plaintiff's interest therein. In 1876 William H. Hamlin and Marie Hamlin, both now deceased, were intermarried in this state. William H. Hamlin had, by a former marriage, one son, the defendant James W. Hamlin, and Marie Hamlin had, by a former marriage, one son, the plaintiff, who adopted the name of Hamlin. William H. and Marie Hamlin acquired considerable land in Snohomish county as their community property. On July 13, 1899, Marie Hamlin conveyed all of this land except one tract known as lot 3, to her husband by warranty deed, in consideration of love and affection. The plaintiff alleged that Marie Hamlin was then in feeble health; that her deed, absolute in form, was in fact made to William H. Hamlin in trust, he to have use, possession, and right to sell during his lifetime for his maintenance and support, and the remainder of the land, with the proceeds, issues and profits thereof, to be given at his death, one-half to the defendant James W. Hamlin and one-half to plaintiff; that Marie Hamlin died on October 8, 1890; that William H. Hamlin accepted the trust, entered into possession and acquired other lands with the rents, issues and profits; that he from time to time disposed of portions of the land so held in trust by him; that prior to January 10, 1906, he conveyed other portions to one John W. Lyke, as security for a loan; that on January 10, 1906, he, by John W. Lyke as his attorney in fact, contracted to sell to the defendant Frank R. Atkins certain of the land, including said lot 3; that plaintiff, at William H. Hamlin's request, conveyed his interest in lot 3 to John W. Lyke, it being then agreed that $2,300, with interest from March 27, 1906, should be paid to him by William H. Ham-

lin out of the proceeds of the sale, and that all of the re-
mainder of the lands theretofore conveyed by Marie Hamlin,
with the proceeds thereof, should be held in trust by Wil-
liam H. Hamlin for the plaintiff and the defendant James W.
Hamlin, share and share alike, and that all of William H.
Hamlin's estate remaining at his death, after payment of
plaintiff's $2,300 note, should be equally apportioned to
plaintiff and James W. Hamlin; that on April 6, 1906, John
W. Lyke and wife, at William H. Hamlin's request, conveyed
the title to the real estate held by John W. Lyke to the de-
fendant Frank R. Atkins, who paid $11,182.50 in cash there-
for, and with his wife, Mary C. Atkins, executed and delivered
to John W. Lyke their note for $10,117.50, secured by mort-
gage on the real estate conveyed, and that John W. Lyke
thereafter transferred said note and mortgage to William H.
Hamlin.   The plaintiff further alleged:

"(15)   That thereafter and on to wit, the 18th day of
November, A. D. 1907, being then mortally sick and in con-
templation of death, Wm. H. Hamlin did assign, transfer
and set over unto the defendant S. A. Hanna the said prom-
issory note dated April 3, 1906, made by the said Frank R.
Atkins and Mary Churchill Atkins, his wife, together with
the mortgage securing the same hereinabove described and
mentioned and did by his deed of warranty in writing convey
and warrant to the defendant S. A. Hanna that portion of
said above described real estate held by the said Wm. H.
Hamlin in trust, as aforesaid, and particularly described as
follows, to wit: (description).

"(16)   That the assignment of said note and of said
mortgage and the conveyance of said land to the said S. A.
Hanna were so made by the said Wm. H. Hamlin in trust
that the said S. A. Hanna should collect the principal and
interest due and to become due upon said promissory note
hereinabove mentioned and made by the said Frank R. Atkins
and Mary Churchill Atkins, his wife, to the said John W.
Lyke and by the said John W. Lyke assigned to the said
Wm. H. Hamlin and to apply, divide and distribute the pro-
ceeds of said note and said land as follows:   (1) That the
said S. A. Hanna should pay to herself a reasonable compen-
sation for administering said trust.   (2) That the said S. A.

Hanna should pay therefrom to plaintiff the said sum of twenty-three hundred dollars ($2,300) and interest above mentioned. (3) That the said S. A. Hanna should divide all the rest, residue and remainder of said trust estate between the plaintiff and the defendant, James W. Hamlin.

"(17)   That thereafter and on or about the first day of December, 1907, the said Wm. H. Hamlin died intestate leaving surviving him no wife and no child or children other than the said James W. Hamlin.

"(18)   That the said S. A. Hanna accepted said trust and took possession of all of the property of every kind and nature left by the said Wm. H. Hamlin and all of which was held by the said Wm. H. Hamlin as trustee, as hereinabove alleged, including the promissory note, mortgage and real estate mentioned and described in paragraph 15 hereof and ever since has held, and does now hold, and possess the same, in trust for the purposes above alleged and not otherwise.

"(19)   That the said S. A. Hanna does now deny that she holds said property in trust for this plaintiff in any particular or to any extent other than to pay to this plaintiff the said sum of twenty-three hundred dollars ($2,300) and interest and has refused, and does now refuse, to acknowledge the right of plaintiff to any right, title, or interest, in, or to, said note, mortgage and lands, or any part thereof, and that the said S. A. Hanna is threatening to, and will, as plaintiff believes, collect the amount now due upon said note, and that she will pay over the whole of the proceeds thereof to the said James W. Hamlin excepting only the said sum of twenty-three hundred dollars ($2,300) and interest."

In addition to other equitable relief, plaintiff asked that S. A. Hanna be decreed a trustee; that her reasonable expenses be ascertained and paid; that she be directed to pay plaintiff's $2,300 note; and that the remainder of the money to be collected by her on the Atkins note, and all of the real estate conveyed to her be transferred to plaintiff and James W. Hamlin share and share alike. James W. Hamlin and Mrs. S. A. Hanna answered separately. The defendant James W. Hamlin, with other affirmative defenses, alleged that Marie Hamlin never made or executed any writing whereby she imposed any trust upon the real estate conveyed

by her, and that any trust claimed by plaintiff to have been imposed on any of the real estate is an express trust resting in parol only. This allegation being admitted, the plaintiff, on the trial, abandoned any attempt to establish any express trust imposed upon the land, but asserted the trust which he alleged had been imposed upon the personal property by William H. Hamlin immediately prior to and in contemplation of his death.

The trial court found that the Atkins note and mortgage were executed and delivered as alleged; that $8,941.50 was due thereon, with interest from April 3, 1906; that John W. Lyke sold and transferred them to William H. Hamlin; that on March 27, 1906, William H. Hamlin executed and delivered to plaintiff his note for $2,300; that on November 18, 1907, William H. Hamlin assigned and transferred the Atkins note and mortgage in trust to S. A. Hanna, who was to collect the same and pay $1,000 to herself, $2,300 and interest to the plaintiff on the note held by him, and pay to the plaintiff and James W. Hamlin equally the remainder thereof; that William H. Hamlin died on December 22, 1907; that S. A. Hanna accepted said trust, but has since repudiated the same, refusing to pay the plaintiff any sum other than the $2,300 note; that $10,276.72 was due on the Atkins note; that $1,000 should be paid to S. A. Hanna; that $2,783.75 due on plaintiff's $2,300 note should be paid him, and that the remainder of the $10,276.72 should be equally divided between the plaintiff and James W. Hamlin. Judgment was entered in plaintiff's favor for $6,030.23, against S. A. Hanna, Frank R. Atkins, and Mary C. Atkins, and against all defendants, for costs. The defendants have appealed.

The appellants contend that the findings are not sustained by the evidence. The testimony of S. A. Hanna was given by deposition. All of the other witnesses testified in court. The evidence was in conflict. The trial judge saw all of the witnesses except S. A. Hanna, heard them testify, and passed

upon their credibility, and we are unable to conclude after a careful reading of the record that his findings should be disturbed.

The appellants contend that the written assignment of the Atkins note and mortgage to Mrs. Hanna was an attempted testamentary disposition of his property by William H. Hamlin, not executed with the formality required in the execution of a will, and therefore void. The note, mortgage, and assignment were delivered either to S. A. Hanna or one W. H. Schumacher by William H. Hamlin, who never had possession of or control over them at any time thereafter. They were recorded immediately after his death, and it appeared that Mrs. S. A. Hanna acknowledged the creation and existence of the trust of which she was trustee; but denied that she was to pay any money to the respondent other than his $2,300 note. The contention that the assignment was an attempted testamentary disposition of his property by William H. Hamlin is not sustained by the evidence.

The appellants further insist that the evidence was not sufficient to establish any trust. In their brief they review the evidence at length in an attempt to sustain this contention. Without repeating the evidence in this opinion, we conclude that it was sufficient to establish the fact that the assignment, note, and mortgage completely passed from William H. Hamlin's dominion and control during his lifetime, when he executed the assignment, and that the trust was imposed by him. The difficulty with the appellants' present contention is that they tried their cause on one theory in the superior court, and now attempt to present it on another and inconsistent theory here. In the superior court they proceeded upon the theory that S. A. Hanna had been made a trustee by William H. Hamlin, and that she thus took title to the note and mortgage. The only substantial controversy on the trial was as to the terms and conditions of the trust, the respondent there contending that he was to receive one-half of the proceeds of the Atkins note and mortgage after

the payment of his $2,300 note and $1,000 to Mrs. Hanna; and the appellants, although admitting that Mrs. Hanna was to pay plaintiff's note, vigorously contending that, after its payment and the payment of $1,000 to Mrs. Hanna, James W. Hamlin was to be the only beneficiary of the trust. The appellant S. A. Hanna, in her answer, pleaded the trust as she understood it, and in her deposition testified to its creation. All of the appellants requested the trial court to make the following finding:

"That on said 18th day of November, 1907, the said William H. Hamlin did sell, assign and set over unto one S. A. Hanna the said note and mortgage in trust that the said S. A. Hanna should collect said note and mortgage and from the proceeds should pay:

"(1) To pay all bills and expenses owing by the said William H. Hamlin.

"(2) To pay to the said S. A. Hanna $1,000.

"(3) The said S. A. Hanna should pay all expenses that she might be put to by reason of said trust.

"(4) That S. A. Hanna was to pay E. H. Hamlin a note held by him in the sum of $2,300 when he, said Hamlin, gave Mr. Everton a quit claim deed to Everton's property.

"The balance of said money was to be given to his son James W. Hamlin."

Appellants now take the position that the transfer from William H. Hamlin to S. A. Hanna was a nonconsummated gift, *causa mortis;* that title to the note and mortgage never passed to her; that they were deposited and remained with W. H. Schumacher, subject to the dominion and control of William H. Hamlin, who made no disposition of them at any time prior to his decease; that Schumacher was an agent of William H. Hamlin and that the agency was terminated by the death of the principal. This position, that no completed delivery was made, is inconsistent with that taken by appellants upon the trial; as they then admitted, or at least failed to dispute, the completed transfer and delivery of the note and mortgage to Mrs. Hanna in trust. In any event, we think that, in the absence of evidence to the contrary, the

deposit of the note and mortgage and assignment with Schumacher by William H. Hamlin was a complete delivery in law; that the circumstances as detailed by the evidence show loss of dominion and control by William H. Hamlin; that Schumacher was appointed agent for Mrs. Hanna by William H. Hamlin, and that delivery to him was a complete delivery to her.

"Gifts *causa mortis* cannot be consummated by mere parol. There can be no such gift without an intention to give and a delivery, either actual or constructive, of the thing given. . . . the donor must part with all dominion over the property, so that no further act is required of him or his personal representative, to vest the title perfectly in the donee, if it be not reclaimed by the donor during his life. If the possession of the donee does not continue the gift is at an end. He must take and retain possession until the donor's death. It is well settled that the delivery need not be made to the donee personally, but may be made to another as his agent or trustee, and that without his knowledge at the time of making the gift. This is essentially a delivery, not to an agent of the donor, but to a trustee for the donee. So also a gift providing for a division of the property among specified persons after the payment of bills and funeral expenses is a valid gift *causa mortis*." 20 Cyc. 1231-1233.

See, also, *Devol v. Dye*, 123 Ind. 321, 24 N. E. 246, 7 L. R. A. 439; *Varley v. Sims*, 100 Minn. 331, 111 N. W. 269, 117 Am. St. 694, 8 L. R. A. (N. S.) 828. In *In re Estate of Podhajsky*, 137 Iowa 742, 115 N. W. 590, the court said:

"It will not be disputed that it is entirely competent for a person, either by a duly acknowledged written instrument or even by parol, to turn over personal property, moneys, securities or choses in action into the hands of another, to be held and used for the benefit of some designated beneficiary, and that, when this is done, such beneficiary obtains an immediate and vested interest in the subject of the trust, which the trustor cannot revoke or disaffirm unless such power of revocation has been reserved in express terms at the time the trust was created. . . . Even a gift *causa mortis* may be effected by delivery to a third person in trust for the donee,

although the gift does not come to the knowledge of the donee, and is not accepted by him, until after the death of the donor. The acts of the trustee or third person receiving the property for the benefit of the donee are deemed to be in the interest of the latter, and the acceptance of the gift is presumed."

Our conclusion is that a complete delivery was made; that W. H. Hamlin lost all dominion and control over the property; that Mrs. S. A. Hanna was made a trustee; that the trust created was as adjudged by the trial court; that the judgment is right, and that it should be affirmed. It is so ordered.

RUDKIN, C. J., MOUNT, PARKER, and DUNBAR, JJ., concur.