[No. 4903.   Decided March 25, 1904.]

ROBERT MUIR, *as Receiver of the Scandinavian-American Bank, Appellant,* v. G. H. WESTCOTT, *Respondent.*[1]

POWER OF ATTORNEY—CONSTRUCTION—EXTENT OF AUTHORITY—POWER TO SELL FIXTURES FOR BENEFIT OF CREDITORS.   A power of attorney from the owner of a bank authorizing an agent as attorney in fact to take charge of all property and effects of the principal, especially the properties known as said bank, to direct its policies, vote its stock, and, after specifically describing stocks and securities to be sold for the purpose of security for loans or advances, granting full authority to hypothecate, assign, and transfer any and all of the property above set forth, and to do all things advisable, in the discretion of the agent, whether the power is explicitly set forth or not, authorizes the sale of the safe and fixtures of the bank to a trustee for the benefit of its creditors.

SAME—ORAL EVIDENCE EXPLAINING WRITTEN POWER OF ATTORNEY. In such a case a cablegram to the attorney in fact directing him to take charge and make the best settlement for creditors possible, is not inadmissible as varying the terms of the written power, as it only tends to explain it, if any explanation was necessary.

APPEAL—REVIEW—HARMLESS ERROR.   The admission of immaterial evidence is harmless in a case tried *de novo* on appeal.

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered April 2, 1903, upon findings of the court, dismissing on the merits a garnishment proceeding, with costs against the plaintiff.   Affirmed.

[1]Reported in 75 Pac. 1107.

*Everett C. Ellis,* for appellant. The power of attorney did not authorize the sale of fixtures' for the benefit of creditors. *Gilbert v. How,* 45 Minn. 121, 47 N. W. 643, 22 Am. St. 724; *Bliss v. Clark,* 16 Gray 60; *Rountree v. Denson,* 59 Wis. 522, 18 N. W. 518; *Weston v. Alley,* 49 Me. 94; *Holmes v. Morse,* 50 Me. 102; *Lawrence v. Gebhard,* 41 Barb. (N. Y.) 575; *Gouldy v. Metcalf,* 75 Tex. 455, 12 S. W. 830, 16 Am. St. 912; *Anderson v. Bigelow,* 16 Wash. 198, 47 Pac. 426. The power to attend to the business does not include a power to sell. *Coquillard's Adm'r v. French,* 19 Ind. 274; *Ashley v. Bird,* 1 Mo. 640, 14 Am. Dec. 313; *Rossiter v. Rossiter,* 8 Wend. 494, 24 Am. Dec. 62; *Ward v. Thrustin,* 40 Ohio St. 347; *Holbrook v. Oberne,* 56 Iowa 324. And a power to sell does not include the power to make a voluntary conveyance. *Stocker v. Foster,* 178 Mass. 591, 60 N. E. 407; *Garland v. Smith,* 164 Mo. 1, 64 S. W. 188; *Harty v. Doyle,* 49 Hun 410; *Taylor v. Haskell,* 178 Pa. St. 106, 35 Atl. 732.

*Dorr & Hadley,* for respondent.

DUNBAR, J.—On the 2d day of May, 1901, one S. M. Bruce, claiming authority to act under power of attorney from one H. St. John, principal defendant in this action (who was the owner of a bank situated in Whatcom county, Washington, known as the Bank of Blaine, and was also the owner of stock and interests in various other banks in the state of Washington), executed and delivered to G. H. Westcott, garnishee and respondent herein, a bill of sale of the safe, fixtures, stationery, and books of said bank. On the same day, and as part and parcel of the same transaction, said Westcott executed a declaration of trust, by which he agreed to dispose of the property above mentioned for the benefit of the creditors of the Bank of Blaine. In

pursuance thereof, Westcott sold the property referred to
in said bill of sale, and proceeded to disburse the funds
thereby obtained, but, before they had all been disbursed,
appellant caused to be served upon him a writ of garnish-
ment, to which Westcott made answer, declaring that he
still had in his possession $400.60 belonging to said trust,
but denying that said funds belonged to defendant. This
answer was controverted by the appellant.

Before the case came on for trial, appellant made de-
mand for a copy of the bill of sale, which said copy was
furnished, and disclosed that it had been executed by S. M.
Bruce, attorney in fact for H. St. John. Bruce testified
that he had executed, and delivered to Westcott, the in-
strument under discussion, which is exhibit "A" in this
case, and received from Westcott the declaration of trust,
which is exhibit "C." Mr. Bruce was then permitted, over
the objection of appellant, to testify that he had received
a cablegram from London, from H. St. John, in cipher,
which interpreted read: "Take charge and make best
settlement for creditors possible."

The court found that St. John, through his authorized
agent and attorney in fact, S. M. Bruce, sold, assigned, and
transferred unto said garnishee defendant, G. H. Westcott,
those certain bank fixtures situate in and belonging to the
Bank of Blaine, of which said bank the said H. St. John
was proprietor, the property in controversy here being the
safe, furniture, fixtures, etc., of the Bank of Blaine; that
Bruce had authority to so dispose of said property, and
that the property had passed from the possession of the
defendant St. John; that, by reason of the premises, said
sum of $400.60 was held in trust by said garnishee defend-
ant for the use and benefit of the creditors of said Bank
of Blaine; and that no part of said sum belonged to the
defendant H. St. John, or to any person other than said

creditors; and that the said garnishee defendant was not, at the time of the writ of garnishment, indebted to the said defendant H. St. John, and had not then any effects or property belonging to said H. St. John; found, also, that it was necessary for said garnishee defendant to employ counsel in the proceedings that had been brought against him, and that a reasonable sum as attorneys' fees for the services of his attorneys in this behalf is $40. Judgment was entered accordingly, dismissing the garnishment proceedings, and adjudging costs against the plaintiff, and entering judgment against the plaintiff for the sum of $40 attorneys' fees.

The power of attorney, on which the defense in this case rests, is as follows:

"This Indenture Witnesseth: That H. St. John, hereinafter called the first party, has made and does hereby make, constitute and appoint S. M. Bruce, of Whatcom county, Washington, hereinafter called the second party, his true and lawful attorney in fact, to do and perform each and all and singular the following acts and things: The first party does hereby empower the second party in the name, place and stead of the first party, to take charge of all property, credits and effects belonging to the first party, or in which the first party has any interest, situated in the state of Washington, and especially in the county of Whatcom, and especially those properties known as the Bank of Blaine, the Citizens' National Bank of Fairhaven, and the Scandinavian-American Bank of New Whatcom, all in Whatcom county, Washington, and to direct the policies of said properties, and to attend any meeting or meetings of stockholders of said property that may be called or held in the absence of the first party from the said county, and to vote said stock at any meeting of stockholders in the name and stead of the first party as fully and to the like purpose as if the first party were present and acting in person, and the second party is hereby further empowered to negotiate and sell said stocks as security

for any loan or advance which the second party may be
able to obtain on said stocks and securities, or any part or
number of them, the said second party being hereby fully
empowered to negotiate loans, and to execute and sign evi-
dences of indebtedness for the purpose of raising money
upon said stocks or properties as fully and to the like pur-
pose as if the first party were present and acted in person;
and the said second party is also empowered to give re-
ceipts, collect money, and to do generally all things inci-
dent to the business and business interests of the first
party, the first party hereby confirming and ratifying all
and singular every act or thing done by the second party
under the powers here granted, whether the power to so
act has been explicitly set forth or not, if the same is found
to be convenient or advisable within the discretion of the
second party, full authority being hereby given the second
party to hypothecate, assign and transfer in the name of
the first party any and all of the securities, stocks or prop-
erty above set forth; and whatsoever act or thing the sec-
ond party may do under the powers aforesaid, or in the
exercise of any discretion or incidental act necessary to the
carrying out of said powers, the first party will and does
hereby ratify and confirm irrevocably and uncondition-
ally."

This instrument was duly signed and acknowledged by
H. St. John. It is earnestly contended by the appellant
that no authority was conferred upon Bruce to dispose of
the furniture of the bank for the benefit of creditors, or
at all. The argument is that it was only the stock or
securities which he was empowered, in any event, to dis-
pose of; that under the law all powers of attorney receive
a strict interpretation, and that the authority is never
extended by intendment or construction beyond that which
is given in terms, or is absolutely necessary for carrying
the authority into effect, and that authority must be strictly
pursued. This power of attorney is so definite and explicit
that it is difficult to discuss it, and, conceding the rule con-

tended for by the appellant—that, where there is a power of attorney to do a particular act followed by general words, these general words are not to be extended beyond what is necessary for doing that particular act for which the power of attorney is given—yet we think the power to sell the property under discussion was plainly and specifically given by the instrument executed. The attorney in fact, at the very commencement, is not only empowered to take charge of the banks described therein so far as stocks, securities, and money on hand is concerned, but he is empowered to take charge of all property, credits and effects. The safe and other furniture of the bank are property, and they are effects belonging to the Bank of Blaine in the county of Whatcom, and the instrument recites that it especially refers to the property known as the Bank of Blaine. It is true that power is given to direct the policies of said property, to attend meetings of stockholders, etc., and it is urged by the appellant that there is no such thing as directing the policies of the fixtures of the bank. But the defendant, in his anxiety to confer absolute authority and to escape the rule with relation to general authority which appellant is now invoking, undertook to specify authority to act in any emergency which should arise. It might become necessary, in the administration of the business of the banks, to attend meetings of stockholders and to vote said stock, and not necessary to sell any of the property of the bank, stock, or assets, or effects, or anything else. It might become necessary to attend such meetings and also to sell and assign the stock and all the other property of the bank, and the instrument, in more than one instance, empowers the attorney in fact to sell the properties of the bank, after specifically describing stocks and securities. So that it was within the evident contemplation of the defendant, St. John, that other

property than stock or securities should. be controlled by
the attorney in fact; and this power of attorney is par-
ticularly expressive in conveying power to do all things
necessary to be done in the premises, whether the power
to so act has been explicitly set forth or not, the only
limitation being that it must be found to be convenient
or advisable within the discretion of the second party.
We think no error was committed by the court in finding
that the attorney in fact did not exceed his authority in
the execution of the bill of sale to Westcott.

It is also insisted by the appellant that the court erred
in admitting the testimony of Mr. Bruce, in relation to the
additional instruction he received from defendant St. John
by cablegram, to the effect that he should take charge and
make the best settlement for creditors possible.    As we
have often said, the admission of immaterial testimony in
the lower court, where the case is tried *de novo* in this
court, would not authorize a reversal of the judgment, but
this court will disregard the testimony, if it finds it imma-
terial, and try the cause on the testimony which is properly
introduced.    Although, in our judgment, there was no
technical error in admitting this testimony; its effect was
not to vary the terms of the written authority; it only
tended to explain the written instrument, if any explana-
tion was necessary, and oral testimony in such cases is per-
missible for the purpose of explaining or expanding the
written authority.

We do not conclude, from an investigation of the record,
that the court abused its discretion in refusing to grant a
new trial on the ground of newly discovered evidence, or
on any other ground.    The judgment is affirmed.

FULLERTON, C. J., and MOUNT and ANDERS, JJ., con-
cur.