[No. 7342. Decided January 5, 1909.]

FRANK A. MAXWELL et al., Respondents, v. DICK HARPER et al., Appellants.[1]

DEEDS—DELIVERY—UPON DEATH OF GRANTOR—CONSTRUCTION— GIFTS—INTENT—EVIDENCE—SUFFICIENCY. There is a valid delivery of a deed where it is deposited with a bank to be held during the grantor's lifetime and delivered after death to the grantee, where it further appears that a clause in the deed so provided and appointed the bank the grantor's "agent" to make such delivery with the same force and effect as if delivered by the grantor during his lifetime, and it appears by extrinsic evidence that the grantor was seriously ill and under obligations to the grantee and desired to make the grantee a gift of the land, reserving only the rents and profits during his life, and after the delivery to the bank he had no control or dominion over the deed.

SAME—EVIDENCE—AMBIGUITY IN DEED. A deed delivered to a third party to be held during the lifetime of the grantor and delivered after death to the grantee, which so provides and appoints such third party the "agent" of the grantor to make such delivery, is so ambiguous as to admit of extrinsic evidence to show the intent of .the grantor.

WITNESSES—COMPETENCY—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT. It is not incompetent, as a privileged communication between attorney and client, to show by the testimony of the attorney that the grantor in a deed employed him to effect a gift of the land to the grantee, reserving the rents and profits during the lifetime of the grantor, and for that purpose a deed was made and delivered to a third party specifying that it was to be held during the grantor's life and after death delivered to the grantee.

ESCROWS—DEEDS—GIFTS—RIGHTS OF GRANTEE—ACTS OF HOLDER. Where a deed was delivered to a third party to be held during the lifetime of the grantor and after death delivered to the grantee as

[1]Reported in 98 Pac. 756.

a gift, the mistaken belief of such third party that the deed was subject to the dominion and control of the grantor does not affect the rights of the grantee.

SAME—WITHDRAWAL—INTENT OF GRANTOR. The intent to vest title in a grantee by delivery of a deed to a third party to be delivered to the grantee upon the death of the grantor, cannot be changed by the grantor by withdrawing the deed without the consent of the grantee.

SAME—SUBSEQUENT MORTGAGE BY DONOR. The fact that a grantor after deeding land as a gift by an unrecorded deed, mortgaged the same to an innocent mortgagee, does not affect the donee's title to the land, subject to the mortgage.

Appeal from a judgment of the superior court for Columbia county, Miller, J., entered April 15, 1908, upon findings in favor of the plaintiffs, after a trial before the court without a jury, in an action to quiet title. Reversed.

*Cain & Hurspool*, for appellants.
*M. M. Godman* and *Will H. Fouts*, for respondents.

CROW, J.—Action by Frank A. Maxwell and others against Dick Harper and Laura Harper, his wife, to cancel and set aside a deed to land in Columbia county, and to quiet title. From a judgment in favor of the plaintiffs, the defendants have appealed.

The evidence shows, that one W. A. Maxwell, on October 22, 1906, executed a warranty deed for the land now in dispute, to the appellant Laura Harper, and delivered it to F. A. McMasters, cashier of the Dayton National Bank, of which he (Maxwell) was then president; that he had consulted with Mr. McMasters, who was an attorney, with a view to taking the necessary legal steps for giving the land to Laura Harper, but reserving the rents and profits to himself during his lifetime; that Mr. McMasters advised him that such a gift and transfer could be made by deed; that thereupon and for that purpose Maxwell requested McMasters to draw the deed; that with the design of expressing Maxwell's intent with regard to its delivery, but without explicit directions

from him as to the language to be used, McMasters inserted
in the deed the following clause:

"This deed is to be held by the Dayton National Bank of
Dayton, Washington, until time of death, and I hereby ap-
point said bank (acting through its officers) my agent to
deliver this instrument to Laura Harper upon my death and
that the said delivery may have the same force and effect
as if delivered to her by me during my lifetime;"

that the deed was executed by W. A. Maxwell, and together
with certain stock certificates, was delivered to Mr. McMasters
as cashier of the bank without further instructions; that Mr.
McMasters inclosed the deed and certificates in an envelope
upon which he wrote the name of W. A. Maxwell, and placed
them in a safe of the bank to which Maxwell did not have
the combination; that Maxwell was at the time seriously ill;
that his physician advised him he could do nothing further
for him; that he was a bachelor; that for many years he had
lived and made his home with the appellants, Dick Harper
and Laura Harper, his wife, Dick Harper being his cousin;
that he desired to retain the use of the land for himself during
his life, but wished it to go to Mrs. Harper at his death; that
he ceased to be president of the bank about two months after
the date of the deed; that McMasters also ceased to be
cashier, being succeeded by one Jackson; that the deed then
in the bank was turned over to Jackson by McMasters; that
shortly thereafter Jackson consulted Maxwell with regard
to the deed; that Maxwell then told him to keep it; that
Maxwell died on October 20, 1907; and that on October 23,
1907, Jackson delivered the deed to the appellant Laura
Harper, who caused it to be recorded. The evidence further
shows that, at or about the time W. A. Maxwell executed
the deed, he also indorsed certain certificates of mining stock
and bank stock to Laura Harper, and delivered them to
McMasters, the indorsement on the bank stock reading as
follows:

23—51 WASH.

"For value received I hereby sell and transfer unto Laura Harper six shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint the cashier of said bank to deliver said stock to her upon my death; to transfer the said stock on the books of the within named corporation, with full power of substitution in the premises.

"Dated October 22nd, 1906;"

that afterwards the Columbia National Bank of Dayton took over and succeeded to the business of the Dayton National Bank, and it then became necessary to transfer the bank stock above mentioned; that thereupon Jackson, the cashier, conferred with Maxwell in regard to such transfer, and was directed by him to erase the name of Laura Harper and insert that of another assignee; that this was done, the stock being sold and the proceeds placed to the credit of Maxwell in his bank account; that on September 28, 1907, Maxwell executed a lease of the land for two years to one Simmerman, who was then his tenant; that in April, 1907, he mortgaged the land to Baker & Baker for $5,000, and used the proceeds of the loan, but the evidence fails to show that Baker & Baker had any knowledge or notice of the execution and delivery of the deed, or that the appellant Laura Harper knew of or consented to the execution of the mortgage.

About September 1, 1907, after the sale of the bank stock and the execution of the mortgage, and while the deed remained in the bank, Maxwell had a conversation with Hardy E. Hamm, then his attorney, now his executor, to which conversation Mr. Hamm testified, and in which Maxwell stated that, owing to the change in the bank, he did not know whether the Columbia National Bank had authority to hold the deed, and then requested Mr. Hamm to investigate and attend to the matter so that the deed might be held, kept for, and delivered to Mrs. Harper upon his death. The deed was never in the possession of Maxwell after the date of its original execution, nor was it out of the custody of the bank until it was delivered to Mrs. Harper.

Maxwell died testate, and the plaintiffs Frank A. Maxwell and Richard E. Maxwell, Friend Isaac Maxwell, and Mary A. Simmerman, his brothers and sister, being his legatees, and Hardy E. Hamm as his executor, instituted this action to set aside the deed and quiet their title. They alleged, (1) fraud and undue influence on the part of the appellants in procuring the execution of the deed, and (2) that the deed was void for want of delivery. The claim of fraud and undue influence was entirely abandoned on the trial, no evidence being introduced to support the same, and the controlling question now before us is, whether the deed was void for want of delivery. The trial court found that W. A. Maxwell did not intend to vest in Laura Harper a present interest or estate; that he did not intend to, nor did he, part with dominion or control over the deed, and that he was the owner of the land at the time of his death.

From a careful examination of the evidence and the entire record we are compelled to conclude that the trial judge erred in making the above findings, and in his conclusions of law thereon. The question of the delivery or nondelivery of a deed is one that must be governed by the intent of the grantor. *Matson v. Johnson*, 48 Wash. 256, 93 Pac. 324. Such intent must be gathered from the terms of the deed itself, if it can be consistently done. If the language used is susceptible of more than one construction, that one must be adopted which militates most strongly against the interests of the grantor. Devlin, Deeds, § 848. If the deed upon its face appears to be uncertain or ambiguous, it may then be construed in the light of all the surrounding circumstances, evidence of such circumstances being admitted not to change, modify, or add to the terms of the written instrument, but to aid the court in arriving at a correct interpretation of its language, and ascertaining the true intent of the grantor. 1 Elliott, Evidence, § 584; *Carr v. Jones*, 29 Wash. 78, 69 Pac. 646; *Muir v. Westcott*, 34 Wash. 463, 75 Pac. 1107;

*Citizens Bank of Emporia v. Brigham,* 61 Kan. 727, 60 Pac.
754; *Brannan v. Mesick,* 10 Cal. 95.

A grantor's deposit of his deed with a third party, to be
held by such third party until the grantor's death and then
delivered to the grantee therein named, the grantor reserving
no dominion or control over the deed during his lifetime, con-
stitutes a valid delivery and vests an immediate estate in the
grantee, subject to a life estate in the grantor. *Gridley v.
Atkins,* 78 Conn. 380, 62 Atl. 337, 112 Am. St. 152, 4 L. R.
A. (N. S.) 816; *Ball v. Foreman,* 37 Ohio St. 132; *Owen v.
Williams,* 114 Ind. 179, 15 N. E. 678; *Stout v. Rayl,* 146
Ind. 379, 45 N. E. 515; *Meech v. Wilder,* 130 Mich. 29, 89
N. W. 556; *Ruiz v. Dow,* 113 Cal. 490, 45 Pac. 867; *Kirk-
wood v. Smith,* 212 Ill. 395, 72 N. E. 427; *Wilson v. Carrico,*
140 Ind. 533, 40 N. E. 50, 49 Am. St. 213. From a careful
examination of all the evidence, we conclude, that such a
delivery was made by W. A. Maxwell; that it was his inten-
tion to place the deed beyond his dominion and control; that
he did so by depositing it with the bank to be held until his
death, and then delivered to the appellant Laura Harper;
that he only retained the possession, use, and rental of the
land during his lifetime, and that the appellant Laura Har-
per, upon such delivery to the bank, became immediately
vested with the fee simple title, subject only to Maxwell's life
estate.

The respondents, however, contend that the deed itself in-
dicates that Maxwell did not intend it to pass from his
dominion or control during his lifetime; that its language
being clear and certain, no parol evidence showing the sur-
rounding circumstances should have been admitted to add to,
modify, or change its terms; that the evidence of Hardy E.
Hamm, stating the conversation between himself and Max-
well, was inadmissible, such conversation being a privileged
communication between himself as attorney and Maxwell as
client; that McMasters and Jackson, the respective cashiers,
both understood the bank was holding the deed as agent for

Maxwell and subject to his control; that they would have returned it to him had he so requested; that Maxwell himself, by his subsequent acts in selling the bank stock and in leasing and mortgaging the land, evidenced the fact that it was not his intention to permit the possession of the deed, or the title to the land to pass from him, and that the deed was absolutely void for want of delivery.

The respondents' contention that the deed itself shows no intention to deliver during the lifetime of Maxwell is based upon the scrivener's use of the word "agent" in the clause above quoted. They insist that this word shows an intention on the part of the grantor to make the bank *his* agent, that it was not the agent of the grantee, that upon his death its agency ceased, and that as it had then made no delivery, none could be thereafter made. It is true that the word "agent" has a technical meaning, and that the relation of principal and agent is terminated by the death of the principal. It should be noted, however, that the grantor intended the deed to serve some lawful purpose, and did not understand himself to be performing an idle act in executing and depositing it with the bank. In construing the deed, elementary rules require us to adopt such an interpretation as will give it force, rather than one that will make it of no effect. *Pennsylvania Mtg. Inv. Co. v. Simms,* 16 Wash. 243, 47 Pac. 441.

In *Jackson v. Meyers,* 3 Johns. 388, 395, Chancellor Kent said:

"The intent, when apparent and not repugnant to any rule of law, will control technical terms, for the intent, and not the words, is the essence of every agreement. In the exposition of deeds, the construction must be upon the view and comparison of the whole instrument, and with an endeavor to give every part of it meaning and effect."

Applying this rule, we do not think we are compelled to so construe the use of the word "agent" as to hold that the bank was only the agent of the grantor and that it could not deliver the deed to Mrs. Harper after his death. The apparent

intent of Maxwell, as gathered from the entire instrument and the surrounding circumstances, should control the use of technical terms. The trial court evidently considered that the use of the word "agent" rendered the deed somewhat ambiguous, and therefore admitted evidence of all the circumstances surrounding its execution and deposit. To this evidence the respondents objected, and they now insist that it was incompetent and should not be considered. We think it was properly admitted to aid the court in arriving at a correct interpretation of the language used, and that it clearly shows the intention to make a present delivery such as would place the deed beyond the grantor's dominion and control.

The evidence of Hardy Hamm, to which the respondents objected, was properly admitted, as the conversation to which he testified tended to show an intentional delivery by Maxwell, and was not such a confidential communication between attorney and client as to be privileged and inadmissible. *Rosseau v. Bleau,* 131 N. Y. 177, 30 N. E. 52, 27 Am. St. 578. Assuming that the two cashiers, McMasters and Jackson, did in fact regard the deed as being in the custody of the bank subject to the dominion and control of W. A. Maxwell, and that they would have returned it to him had he so requested, such a mistaken view entertained by them as to their duty in the premises would not avoid the deed or its delivery. *White v. Watts,* 118 Iowa 549, 92 N. W. 660.

While it is true that Mr. Maxwell afterwards leased and mortgaged the land, we do not think he thereby deprived the appellant Laura Harper of her vested title. The vital question here is not what intention he may have afterwards formed, but what was his intention at the time the deed was executed and deposited with the bank. If his intention was such as to make the delivery complete and valid in the first instance, he had no right thereafter to change such intention and withdraw the deed or mortgage the land without the consent of his grantee. *Bury v. Young,* 98 Cal. 446, 33

Pac. 338, 35 Am. St. 186; *Kirkwood v. Smith*, 212 Ill. 395, 72 N. E. 427; *Albright v. Albright*, 70 Wis. 528, 36 N. W. 254; *Grilley v. Atkins, supra.*

The mortgagees will doubtless be protected in their lien, if they acquired it without notice of the existence of the unrecorded deed, or of the title of the appellant Laura Harper, but that fact cannot affect her right to retain her title to the land as against the legatees and executor of Maxwell.

Our conclusion from the evidence is that W. A. Maxwell intended to deliver the deed, that it is not void for want of delivery, and that the trial court erred in vacating and setting it aside. The judgment is reversed, and the cause remanded with instructions to enter a decree in favor of the appellant, quieting her title to the land as against the respondents.

RUDKIN, DUNBAR, and FULLERTON, JJ., concur.

HADLEY, C. J., MOUNT, and CHADWICK, JJ., took no part.