[No. 13478.   Department One.   November 13, 1916.]

G. W. SHOWALTER, *Respondent*, v. JOHN F. SPANGLE *et al.*,
*Appellants.*[1]

WITNESSES—COMPETENCY—TRANSACTION WITH PERSONS SINCE DE-
CEASED.   In an action to quiet title against two defendants, man and
wife, claiming distinct properties through separate deeds of gift,
as separate property, each of the defendants is entitled to testify on
behalf of the other as to transactions had with the deceased, al-
though disqualified in his or her own behalf, by Rem. 1915 Code,
§ 1211.

SAME.   In such case, the interest of each spouse in the other's
separate property is prospective only, and does not disqualify.

DEEDS—DELIVERY—INTENTION—EVIDENCE—SUFFICIENCY.   The evi-
dence is insufficient to show delivery of deeds of gift, in that no
mutual intention presently to pass title was shown, where it ap-
pears that the grantor, in her last sickness, told her son that she
was going to die, that in a box were two deeds, one for him and
one for his wife, and requested that he take the box and "straighten
up her affairs or her estate," giving no direction as to the deeds
apart from the other contents of the box; and that the son had a
key to the box.

DESCENT AND DISTRIBUTION—RIGHTS OF HEIRS—TITLE—STATUTES
—ESTOPPEL.   The failure of heirs to complain of the omission of
real estate from the inventory, does not estop them from claiming
an interest as heirs, in view of Rem. 1915 Code, § 1366, whereby
real estate descends to the heirs immediately on the death of the
ancestor.

Appeal from a judgment of the superior court for Spokane
county, Kennan, J., entered November 26, 1915, upon find-
ings in favor of the plaintiff, in an action to quiet title, tried
to the court.   Affirmed.

*Danson, Williams & Danson* (*George D. Lantz*, of coun-
sel), for appellants.

*Davis & Heil*, for respondent.

ELLIS, J.—Action to quiet title to real estate.   The facts
are as follows:  Plaintiff is the son of Mrs. Sarah Jane Sho-

[1]Reported in 160 Pac. 1042.

walter.   Mrs. Showalter and defendant Mrs. Mary Alma Spangle are sisters.  They are the only heirs of George W. and Marcella E. Cook.  About 1883, George W. Cook acquired title to two and one-half lots and Marcella E. Cook acquired title to another two and one-half lots in the town of Cheney, Washington.  In 1888, through the medium of trustees, the property standing in his name was deeded to her, thus vesting in her the record title to all of the property. The Cooks resided upon the property the rest of their lives, he dying in 1901, she in 1912.  No probate proceedings were ever had upon his estate.  Her estate was probated, defendant John F. Spangle acting as administrator, but the real estate in issue was not listed as a part of the estate.  On January 18, 1907, Mrs. Cook made a deed of two and one-half of the lots in question to defendant Mary Alma Spangle, and another deed of the other two and one-half lots to defendant John F. Spangle, but she did not then deliver either of these deeds.   She kept them at all times in a tin box which she kept part of the time in a bank and part of the time at her home.   These deeds were found in the box with about $40 in money, certain promissory notes, and her other important papers, when it was opened after her death.   She died August 6, 1912, at the Spangle home, where she had gone several weeks previously.   The two deeds were placed of record by John F. Spangle on August 22, 1912, the same day of his appointment as administrator.   On December 16, 1913, Sarah Jane Showalter executed a deed conveying to plaintiff an undivided one-half interest in the four lots and the two half lots in question, plaintiff thus acquiring whatever interest she had therein as an heir of George W. and Marcella E. Cook, her parents.  He brought this action to quiet his title to this undivided one-half, further claiming in any event an undivided one-fourth through his mother as an heir of George W. Cook.  Defendants answered, claiming title to the entire property by virtue of the above mentioned

deeds from Mrs. Cook. By reply plaintiff denied delivery of those deeds. John F. Spangle testified as follows:

"Well, this was some time two or three weeks I think after she [Mrs. Cook] was taken sick. I went into the bedroom— always went and talked to her—she says, 'Frank,' she says, 'I am not going to get well.' I says, 'Mother, you don't want to think about that.' . . . I told her then 'You don't want to think that way,' says I. 'You must remember you are old and cannot recover as quick as a younger person.' 'Well,' she says, 'I know I ain't going to get well,' she says. 'And I want you to straighten up my business.' And she told me the box, what the contents was, and she spoke about some insurance policies, and she says, 'There is a box in there with nearly forty dollars in,' she says. 'There is two deeds there, one for you and one for Mary; and all of the papers are in there.' And just then the nurse came and she quit talking about it. Q. And then what happened A. Well, there was nothing more said in regard to it at that time. Q. Where was the box at the time you had the talk with her and she said she wanted you to get the box? A. Right in the closet about six feet from the bed. Q. And did she deliver it to you? A. Yes, sir. Q. And from then did you have a key also to the box? A. Yes, sir. Q. And what did she say about the deeds to you and to Mary, if anything? A. Well, she said there was two deeds in there, one for me and one for Mary. Q. Tell you to take them? A. Yes, told me to take the box."

This was objected to on the ground that it related to a transaction with a deceased person and was inadmissible as against plaintiff, who claimed title through such person. Counsel for defendants then said, "Your honor cannot consider this testimony in favor of Mr. Spangle, but you can consider it in favor of Mrs. Spangle." The testimony was then admitted. On cross-examination he testified:

"A. She told me about the box, what was in the box, and her papers and about these deeds, and she told about the box containing nearly forty dollars. She says, 'My papers are all in there.' And just then the nurse came in and she quit talking about it at that time. Q. She said all of her papers were in there? A. I am not sure whether she said 'all of her papers.' Q. Did you find any of her papers anywhere except

in this box? A. She has a little trunk. I don't think there were any papers to amount to anything. The main papers were right in this box. . . . Q. Now, if she had wanted you to return that box at any time before her death you would have returned it, would you not? A. If she would have called for it I certainly would. Q. Delivered it to her? A. Certainly. Q. Was there any one else in the room at the time that she delivered this box to you? A. No, not right at that time. The nurse came in just the time she told me to take the box. Q. Now, at the time she gave you the box she told you that she wanted you to take care of her affairs? A. She told me to take the box, that she wanted me to straighten up her affairs or her estate. Of course, I don't remember just how it was. Anyway she wanted me to settle up her business. . . ."

He did not take the box at that time, but did a few days later, as to which transaction, over the same objection, Mrs. Spangle was permitted to testify as follows:

"My mother asked Mr. Spangle if he had taken this box. Q. What did he say? A. He said no that he had not. Q. And then what was done and said? A. After he came in the door he asked me to get the box. Q. In her presence? A. In her presence. I got the box. I gave it to him. He took it and carried it to the postoffice then."

There was evidence that Mrs. Cook had told several other persons that she had made these deeds and intended that defendants should have the property. A brother of plaintiff testified that, in 1910, Mrs. Cook spoke to him of these deeds, said that she had fully determined that his father, whom she did not like, should never have the benefit of any of her property, but now that he was dead she had been "thinking it over a great deal," and, "I may change that yet."

The court found the facts substantially as we have stated them and, concluding that the deeds in question had never been delivered, entered judgment quieting title to an undivided one-half of the lots in plaintiff and awarded him his costs. Defendants appealed.

Two questions are presented: (1) Were all of these lots Mrs. Cook's separate property? (2) Was there a delivery of either of the deeds sufficient to pass title to either of the appellants? The conclusion which we have reached on the second question makes it unnecessary to discuss the first. We shall proceed at once to the question of delivery.

Respondent contends that there was no evidence of a delivery of either of the deeds, in that the testimony of neither appellant as to transactions which it is claimed constituted the delivery was admissible under the statute, Rem. 1915 Code, § 1211, because both of them were parties to the record and each testified touching a conversation or transaction had by the witness with the deceased, under whom respondent claims. Appellants concede that neither was competent to testify in his or her own behalf, but insist that each was competent to testify in behalf of the other. The latter view seems to us the sound one. The prohibition of the statute is against a party in interest or to the record testifying "in his own behalf." Appellants claim title to distinct properties through separate deeds of gift. They might have been sued separately, in which case unquestionably either would have been competent as a witness in behalf of the other, since the other's separate property alone would have been involved. *Foster v. Murphy*, 76 Neb. 576, 107 N. W. 843; *Hiskett v. Bozarth*, 75 Neb. 70, 105 N. W. 990; *Helsabeck v. Doub*, 167 N. C. 205, 83 S. E. 241. In states where the common law right of dower exists a wife, in such a case as this, cannot testify in behalf of her husband. *Ayres v. Short*, 142 Mich. 501, 105 N. W. 1115. But that is because her inchoate right of dower, unlike the husband's curtesy, is a present legal interest indefeasible by any act of the husband. *Wylie v. Charlton*, 43 Neb. 840, 62 N. W. 220.

In the case here, the interest of each spouse in the other's separate property was certainly no greater because of their being joined in the same action than if they had been sued separately. In neither case was it greater than that of a

prospective heir, and we have held that, since the living have no heirs, the interest of the ancestor does not disqualify the heir apparent. *In re Sloan's Estate,* 50 Wash. 86, 96 Pac. 684, 17 L. R. A. (N. S.) 960.

Assuming, therefore, that each appellant was competent to testify on behalf of the other, but not on his or her own behalf, was the evidence sufficient to show a delivery of either deed? It is essential to the delivery of a deed that there be a giving by the grantor and a receiving by the grantee with a mutual intention to pass a present title from the one to the other. It may be made through the hands of an agent and it may be accepted through the hands of an agent, but there must be a mutual intention presently to pass the title. This mutual intention is the cardinal requisite. *Seibel v. Higham,* 216 Mo. 121, 115 S. W. 987, 129 Am. St. 502; *Peck v. Rees,* 7 Utah 467, 27 Pac. 581, 13 L. R. A. 714; *Weisinger v. Cock,* 67 Miss. 511, 7 South. 495, 19 Am. St. 320; *Shults v. Shults,* 159 Ill. 654, 43 N. E. 800, 50 Am. St. 188. This is as essential to a deed of gift as to any other. It is elementary that a deed cannot perform the functions of a will, hence cannot be effectually delivered after the grantor's death. When, however, the grantor delivers the deed to a third person in escrow to be held until the grantor's death and then delivered to the grantee, the grantor retaining no dominion or control over it, the delivery is valid and an immediate estate is vested in the grantee at the date of the delivery in escrow, subject to the grantor's life estate. *Maxwell v. Harper,* 51 Wash. 351, 98 Pac. 756; *Loomis v. Loomis,* 178 Mich. 221, 144 N. W. 552; *Roepke v. Nutzmann,* 95 Neb. 589, 146 N. W. 939; *Huddleston v. Hardy,* 164 N. C. 210, 80 S. E. 158; *Dickson v. Miller,* 124 Minn. 346, 145 N. W. 112; *Criswell v. Criswell,* 138 Iowa 607, 116 N. W. 713; *Griswold v. Griswold,* 148 Ala. 239, 42 South. 554, 121 Am. St. 64; *Rodemeier v. Brown,* 169 Ill. 347, 48 N. E. 468, 61 Am. St. 176.

While it has often been broadly stated that the law makes stronger presumptions in favor of the delivery of a deed of

settlement upon children of the grantor, especially minor children, than in an ordinary case of bargain and sale, nevertheless, on all authority, the question is one of intention to be determined by the attending facts and circumstances. To constitute a delivery,

"It must clearly appear that it was the intention of the grantor that the deed should pass the title at the time, and that he should lose all control over it. A deed for an interest in land must take effect upon its execution and delivery, or not at all." *Wilson v. Wilson*, 158 Ill. 567, 41 N. E. 1007, 49 Am. St. 176.

"Nor is any particular form or ceremony necessary to constitute a sufficient delivery. It may be by acts or words, or both, or by one without the other; but what is said or done must clearly manifest the intention of the grantor and of the grantee that the deed shall at once become operative, to pass the title to the land conveyed, and that the grantor loses all control over it." *Byars v. Spencer*, 101 Ill. 429, 40 Am. Rep. 212.

See, also, *Shults v. Shults, supra*. In every case there must be something from which it clearly appears that there was an intention to make the deed a presently operative conveyance vesting title in the grantee within the grantor's lifetime. *Atwood v. Atwood*, 15 Wash. 285, 46 Pac. 240; *Fain v. Smith*, 14 Ore. 82, 12 Pac. 365, 58 Am. Rep. 281.

So measured, it seems to us that the evidence was wholly insufficient to show a delivery of either of these deeds. We shall consider it first as to the deed in which the wife was named as grantee. Appellant husband, though permitted time and again to state what deceased said at the time of the alleged delivery, did not testify that she told him to deliver the deed to the wife either then or thereafter. True, he testified that she told him one deed was "for Mary." But he did not say that she told him to give it to Mary, or to hold it for Mary, or to record it for Mary, either then or after her death. There was no act or word from which a delivery in escrow can reasonably be inferred. She expressed

the belief that she was going to die. She told him not only of the deeds, but also of the money and the other private papers in the box. The only request she made of him was that he take the box and "straighten up her affairs or her estate." She gave no direction as to the deeds apart from the other contents of the box. She merely described them as she did the money and the insurance policies and in a general way the other contents of the box. She did not authorize him to remove the deeds or anything else from the box, except for use in settling her estate. The very fact that she had held these deeds for years without any attempt to deliver them, and the further fact that, at this time, she gave the witness no direction as to what should be done with them, except the implication from her language that they, with the other contents of the box, should be used in settling her estate, seem to us capable of no other construction than that she believed that these deeds, though never delivered until after her death, could then take effect for the first time in the same manner as a testamentary disposition of the land. In this she was, of course, mistaken, but that cannot supply the place of delivery as an operative instrument during the life of the grantor. *Weisinger v. Cock, supra.*

The case of *Porter v. Woodhouse*, 59 Conn. 568, 22 Atl. 299, 21 Am. St. 131, 13 L. R. A. 64, presents a close parallel to this on the facts. An aged woman owned two houses, in one of which she lived. Several years before her death she made deeds of one of these to P., and of the other to R. On each deed was indorsed the name of the grantee. She placed them in a box in which she kept her will, her bank books, her insurance policies and other important papers, and in which she also had a bag containing $1,000 in gold. The box was kept in a closet in her bedroom. During the last year of her life she told an attendant that she had deeded away the two houses. Having suffered an injury and being apprehensive of death, she told her attendant where the box was and said, "I put that box in your possession. My private papers are

in it and the bag of gold. My will is there and the deeds of the two houses. I told you that I had deeded away these houses. On the deeds are the names of the persons who are to have them." She then directed the attendant to take charge of the box, put it back in the closet, and told her where the key was, saying, "I have said enough so that you will know what to do with the box in case I should die. If I live I will talk further about the contents of the box, but do not open it until after my funeral." She died about a month later. Upon these facts the court, though recognizing the general rule that a delivery of a deed in escrow for delivery to the grantee after death is a valid present delivery, held that the facts stated showed no such intention. The superior court found that the sole purpose of the conversation with the attendant was to give her information of the existence and contents of the box. On appeal the supreme court said:

"The delivery of a deed includes not only an act by which the grantor parts with the possession of it, but also a concurring intent on the part of the grantor that it shall vest the title in the grantee. As we are satisfied that Mrs. Hinman never did any act by which she parted with the possession of the deeds for the benefit of the grantees, the question of her intent becomes immaterial."

Appellants lay much stress upon the assumed delivery by deceased of the key of the box. That circumstance, however, in view of the declared purpose of the delivery of the box, is entitled to little force. Moreover, it will be noted that the witness, though testifying that he had a key, did not testify that deceased gave it to him. From the entire evidence, we are satisfied that the deed was never delivered, even in escrow, with the purpose of consummating the transaction so as to make it a presently operative conveyance.

As to the delivery of the deed in which appellant husband was named as grantee, since his testimony was inadmissible in his own behalf, it cannot aid or be aided by the wife's testimony. Her testimony to avail must be found sufficient

standing alone to show a delivery. But in the transaction detailed in her testimony, the deed was not mentioned. She merely testified that the deceased asked the husband if he had taken the box; that he answered he had not; that he then asked the wife to get the box, and that she did so and gave it to him and he took it to the post office. This is all, and we think it wholly insufficient to prove any intention on the part of the deceased then to deliver the deed to him as a presently operative instrument. There was no evidence that the deceased then had the deed in mind or intended her question touching the box as a delivery of the deed. This evidence merely shows an intention to make him her custodian of the box and whatever it contained. Nor is any of the evidence as to the delivery of either deed aided by the fact that the box containing the deeds and the key to it were produced by the husband after Mrs. Cook's death. She died in the Spangle home. It was admitted that she had possession of the box and of the deeds while there. Naturally on her death they would be found in the possession of the appellants, whether delivered to either of them or not. The evidence was much more compatible with her regarding him as the custodian for her than with the idea that she intended to relinquish control or dominion over the box or any of its contents. *Chambers v. McCreery,* 106 Fed. 364; *Bean v. Bean,* 71 N. H. 538, 53 Atl. 907. Our own decisions, *Maxwell v. Harper,* 51 Wash. 351, 98 Pac. 756; *Matson v. Johnson,* 48 Wash. 256, 93 Pac. 324, 125 Am. St. 924; *Thatcher v. Capeca,* 75 Wash. 249, 134 Pac. 923, cited by appellants, are readily distinguishable from the case here on the facts.

We find no merit in the contention that respondent was precluded from a recovery in this case because of the fact that, with his mother's knowledge, this real estate was not included in the probate of Mrs. Cook's will. Respondent claims by right of his mother's heirship. The real estate descended to the heirs immediately on Mrs. Cook's death. Rem. 1915 Code, § 1366. Unless it was necessary to sell it to pay debts,

it was not essential that it be included in the probate pro-
ceedings. The failure to complain of the nonperformance of
a useless thing can hardly work an estoppel.

The judgment is affirmed.

MORRIS, C. J., MOUNT, FULLERTON, and CHADWICK, JJ.,
concur.