[No. 16586.  Department Two.  January 6, 1922.]

Parker Adams, *Respondent*, v. Edward J. Harris *et al.*, *Appellants*.[1]

Deeds (17-1, 61)—Delivery—Evidence—Sufficiency. The delivery of a deed to a third person to hold until the grantor's death and then record and deliver to the grantee is a valid delivery, where there is no reservation by the grantor of the right to retake it or control its use; and the declaration of the intermediate holder of the deed that she would have delivered it back to the grantor, if requested by him, would be insufficient to affect the sufficiency of the delivery.

Appeal from a judgment of the superior court for Clarke county, Back, J., entered November 1, 1920, in favor of the plaintiff, in an action to set aside a deed, tried to the court. Reversed.

*Crass & Hardin,* for appellants.
*W. W. Sparks* and *F. W. Tempes,* for respondent.

Holcomb, J.—This is an action to annul and set aside a certain deed to certain real estate in Vancouver,

[1]Reported in 203 Pac. 48.

Washington, and have the real estate decreed to be a part of the estate of Edward J. Adams, deceased.

Edward J. Adams, deceased, was an aged, single man, and during the last few months of his life resided with a niece, Mrs. Gillott, in Vancouver, Washington.

On December 19, 1919, he executed the deed in question before a notary public, conveying the real estate described therein to these appellants. On December 23, 1919, he handed to his niece, Mrs. Gillott, a package of papers, requesting her to take charge of the same, and instructing her that, if anything happened to him, she was to see that the deed to the property herein involved was placed on record immediately and returned to the Harris boys, two of the appellants in this case. Mrs. Gillott took the papers, placed them in the drawer of a bureau that was then in the sitting room, which room was also being used as the bedroom of deceased. Mr. Adams died on Sunday night, February 10, 1920. On the Friday night before that, in a conversation with Mrs. Gillott, Mr. Adams told her that some improvements were being urged on the buildings on the property which he had deeded to the Harris boys, which he called the "barn property", but that he would never make any improvements thereon, and the Harris boys could do as they pleased about improvements after his death. A short time before his death, Mr. Adams had consulted a physician and had been informed that his condition was critical and that he had better put his business affairs in order, and he told Mrs. Gillott that he did not expect he would live long, and again requested her not to forget the deed to the "barn property" which he had made to the Harris boys. From the time he gave the papers to Mrs. Gillott, Mr. Adams never requested them to be returned to him, or in-

quired about them in any manner whatever. A short time after he had executed the deed, he stated to Emry P. Harris that he had deeded the property known as the "barn property" to Asa Harris, Ed Harris, Rosa Fowler, and Will Adams.

Respondent and the trial court attach great importance to the answer of Mrs. Gillott upon cross-examination wherein she was asked if she had been asked by Mr. Adams to return the papers to him, if she would have done so, and she answered, "Yes", and "I suppose so."

The question to be determined in this case is, therefore, was there a delivery of the deed?

"Actual manual delivery and change of possession are not required in order to constitute an effectual delivery. But whether there has been a valid delivery or not must be decided by determining what was the intention of the grantor, and by regarding the particular circumstances of the case. Where a father had indicated in various ways that certain property should be bestowed at his death upon his infant son, and for that purpose had executed a deed, of which he, however, retained the possession, effect was given to his intention, despite the fact that there had been no manual delivery of the deed. 1 Devlin, Deeds (2d ed.), § 269."

*Matson v. Johnson,* 48 Wash. 256, 93 Pac. 324, 125 Am. St. 924.

In *Maxwell v. Harper,* 51 Wash. 351, 98 Pac. 756, we held that there is a valid delivery of a deed where it is deposited with a bank to be held during the grantor's lifetime and delivered after his death to the grantee, where it further appears that a clause in the deed so provided and appointed the bank the grantor's agent to make such delivery, with the same force and effect as if delivered by the grantor during his lifetime.

The fact that the deed itself, in the above cited case, contained a recital that it was to be held by the bank

as agent for the grantor, and to be delivered by the bank to the grantee upon the death of the grantor, only evidenced the creation of the agency in writing, rather than orally, as here.

True, we held in *Showalter v. Spangle,* 93 Wash. 326, 160 Pac. 1042, that, "It is elementary that a deed cannot perform the functions of a will, hence cannot be effectually delivered after the grantor's death." But we also there said:

"When, however, the grantor delivers the deed to a third person in escrow to be held until the grantor's death and then delivered to the grantee, the grantor retaining no dominion or control over it, the delivery is valid and an immediate estate is vested in the grantee at the date of the delivery in escrow, subject to the grantor's life estate."

As we said in *Maxwell v. Harper, supra:*

"It should be noted, however, that the grantor intended the deed to serve some lawful purpose, and did not understand himself to be performing an idle act in executing and depositing it with the bank."

We attach no importance to Mrs. Gillott's statement that had the deceased, during his lifetime, called for the deed she would have turned it over to him. The fact is the deceased gave it to her, apparently with the settled intention that she was to attend to the recording of it after his death and deliver it to appellants; that he did not intend to, and certainly did not, exercise any control whatever over it.

In *Maxwell v. Harper, supra,* it was said:

"Assuming that the two cashiers . . . did in fact regard the deed as being in the custody of the bank subject to the dominion and control of W. A. Maxwell and that they would have returned it to him had he so requested, such a mistaken view entertained by them as to their duty in the premises would not

avoid the deed or its delivery. *White v. Watts,* 118 Iowa 549, 92 N. W. 660.''

What was lacking in the case of *Atwood v. Atwood,* 15 Wash. 285, 46 Pac. 240, and *Showalter v. Spangle,* 93 Wash. 326, 160 Pac. 1042, was clearly shown in this case, that is, the intention on the part of the grantor to dispose of the title to the real estate in question, reserving a life estate in himself, as was the case in *Maxwell v. Harper, supra,* to take effect upon his death, to the grantees named in the deed.

We think it was clearly shown that the deceased parted with all dominion and control over the deed. He had also made disposition of others of his properties in the same manner, as is shown by the evidence in the case. He had, in fact, made a deed to another of his nieces, which he took back a short time before his death with the probable intent of changing it, which deed was found in his pocket after his death, and that deed was recorded and given effect.

The credibility of Mrs. Gillott as a witness is questioned by respondent, but viewing her as a niece of the deceased, who would be benefited if the deed to the property in question were annulled, it would seem that greater weight should be given to her testimony.

The case falls within the rule of *Maxwell v. Harper,* and *Matson v. Johnson, supra; Thatcher v. Capeca,* 75 Wash. 249, 134 Pac. 923; *Simmons v. Macomber,* 60 Wash. 469, 111 Pac. 579.

The decree is therefore reversed, with instructions to enter a decree in favor of appellants.

PARKER, C. J., MAIN, BRIDGES, and HOVEY, JJ., concur.