[No. 34012. Department One. May 23, 1957.]

LLOYD FINK, *Individually and as Administrator, Appellant,*
v. THE STATE OF WASHINGTON *et al.,*
*Respondents.*[1]

*Litchman & Litchman,* for appellant.

*The Attorney General* and *Stephen C. Way, Assistant,* for respondents.

FINLEY, J.—This is an action for declaratory relief, in which it is asked (1) that a deed to certain real estate be invalidated or reformed, (2) that a collateral agreement relative to such real estate be construed, (3) that the real estate involved be declared not to be the property of Velma Fink, the grantee named in the deed, but an asset of the estate of John Fink who died intestate, and (4) that Lloyd

[1] Reported in 311 P. (2d) 685.

Fink, his son, and Velma Fink, his mentally incompetent daughter, be declared to be his only heirs, each owning a one-half interest in the property. It is also asked, in the alternative, that the property be subjected to a lien for labor and services rendered to the decedent by Lloyd Fink and his wife, Lela.

At the end of the plaintiff's case, the trial court favorably considered a motion for dismissal. Findings of fact and conclusions of law were entered, together with an order dismissing the cause of action. This appeal followed.

The facts, stated in some detail, are as follows:

On June 27, 1938, John Fink, a widower, became the owner of a home described hereinafter as the Queen Anne property. He lived there with his mentally ill daughter, Velma, took care of her, and did practically all of the house work. On November 15, 1938, John Fink conveyed the Queen Anne property to his daughter, Velma, by a statutory quitclaim deed, reciting consideration of "Ten Dollars, Love and Affection," and reserving a life interest in the grantor. On June 12, 1949, a lot in the Richmond Highlands subdivision of Seattle was purchased on a real estate contract in the name of Velma Fink. The Queen Anne property was sold. Apparently both John Fink and his daughter, Velma, released their interests in the latter. With the proceeds from the sale of the Queen Anne property, the real-estate contract on the Richmond Highlands lot was paid off. Also, from the proceeds, materials were purchased and a new house was constructed on the Richmond Highlands lot.

A warranty deed, executed by the owners of the property, a Mr. William Glen, Jr., and his wife Gudrun Katherine Glen, dated July 21, 1949, in fulfillment of the aforementioned real-estate purchase contract vested title to the Richmond Highlands lot in Velma Fink. In this deed, there are no reservations on the grant, nor any indications of any interest in this property on the part of John Fink, deceased. On November 21, 1949, Velma Fink signed an agreement (plaintiff's exhibit No. 4), which reads as follows:

"VELMA M. FINK, the undersigned, in return for the inter-

est which her father, John Fink, gave to her in the following described property:

"The north 50 feet, measured along the westerly line of Tract 25 of Richland Highlands, County of King, State of Washington,

agrees and covenants to give, and does hereby give the following agreement:

"(1) Her father, JOHN FINK, shall have the right of life tenancy in the above described property, including the right to live in the above described property without paying rent, and the right to rentals from the above described property.

"(2) VELMA M. FINK agrees to supply JOHN FINK with housing, should he move from the above described property.

"(3) VELMA M. FINK agrees that funeral costs for JOHN FINK will be paid for through the estate, on his death."

On April 17, 1950, Velma Fink was declared mentally incompetent and was committed to an institution. On May 12, 1952, Lloyd Fink applied for appointment as the guardian of his sister. John Fink died intestate on November 6, 1952, leaving as his only heirs, Lloyd and Velma Fink. The state of Washington has asserted a lien against the Richmond Highlands property as reimbursement for the lengthy institutional care of Velma Fink. The record does not show the date the claim was asserted by the state, but apparently in amount it approximates the present market value of the Richmond Highlands property.

On November 25, 1952, Lloyd Fink petitioned and was appointed administrator of his father's estate. The present action for declaratory relief was instituted by Lloyd Fink, in his individual capacity and as administrator, on May 13, 1955. In the action Vincent H. D. Abbey, an attorney, was made a party defendant, as guardian *ad litem* for Velma Fink. The state of Washington was also joined as a party defendant.

It has been somewhat difficult to ascertain the nature of the remedy pursued and the relief sought in behalf of appellant. The theory seems to be that there was a failure of consideration as to the deed executed by John Fink relative to the Queen Anne property; that this deed, as well as the deed from independent third parties relative to the Rich-

mond Highlands property and the agreement signed by Velma Fink and quoted above, all should be considered jointly as parts of a single transaction between the decedent and Velma Fink, his mentally incompetent daughter. Apparently, as indicated above, appellant asks that the deed to the Richmond Highlands property be set aside or invalidated and reformed, and that title to the property by order of the court be vested in the estate of the decedent. There would certainly be no point in setting aside or reforming the deed from decedent John Fink to Velma Fink respecting the Queen Anne property. It was sold and conveyed to third parties; the proceeds of the sale were used to purchase the Richmond Highlands property and to construct a new house thereon.

Thus, appellant's principal attack seems to be directed at the deed to the Richmond Highlands property and the agreement signed by Velma Fink. We have noted above that this deed was executed by third parties who are in no way involved in this lawsuit. Again, as noted above, there is no reservation on the grant, and the deed itself indicates no interest whatsoever in the property on the part of John Fink, deceased.

It seems to us that the remedy pursued and the relief sought is unquestionably equitable in nature; and that, as a consequence, the matter is governed basically by principles of equity. This was not emphasized by the trial court, nor mentioned in the briefs or arguments of the parties on this appeal.

The trial court excluded testimony by Lela Fink, the wife of Lloyd Fink. This was on the ground that such testimony would violate (a) the so-called *dead man's statute* (RCW 5.60.030) and (b) the *parol evidence rule*. The testimony purported to relate to conversations with the decedent respecting his purpose or reasons for deeding the Queen Anne property to Velma Fink. At page 13 of his brief, the respondent states:

"It is conceded by the respondent that in accordance with the decisions of this court in *Showalter v. Spangle*, 160 Pac. 1042, 93 Wash. 326, at Page 330, and *Griffin v. Lear*, 212 Pac.

271, 123 Wash. 191, at Page 202, Mrs. Lela Fink was not disqualified from testifying by the provisions of RCW 5.60.030."

However, respondents contend that Mrs. Fink's testimony was properly excluded on the basis of the *parol evidence rule*. It is pointed out that the agreement signed by Velma Fink, when examined in conjunction with the two aforementioned deeds, clearly and specifically spells out the consideration involved; that the agreement in no way mentions or infers that Velma Fink was to take care of her father and to provide him with love and affection—the only material reference in the agreement being that the decedent was given the right to occupy the Richmond Highlands property, or in the alternative, that he be furnished housing by Velma Fink.

The appellant contends (a) that the deeds and the agreement contain a mere recitation as to consideration, (b) that the actual consideration for the gift of the property may be proved by parol testimony, (c) that the actual consideration was that Velma Fink personally would care for her father and would accord him love and affection, and (d) that, because of her mental illness, Velma Fink was unable to do so, (e) that the consideration for the transaction failed, and (f) that the transaction should be unwound, or reformed, to give the Richmond Highlands property to the estate of John Fink, deceased.

Respondents urge that the provisions of the agreement are no mere recitation of consideration, but that they constitute a detailed description and elaboration relative to the consideration involved. This being so, respondents contend that the provisions of the agreement and the two deeds cannot be varied by parol testimony, citing among other cases *Morris v. Healy Lbr. Co.*, 46 Wash. 686, 91 Pac. 186, which states:

"While it is permissible for certain purposes to show by parol what the actual consideration was upon which a deed is founded, it is never permitted where the purpose of the evidence is to annex a condition to the instrument not expressed in it. Here the purpose of the oral evidence was to show that the grant was made upon a condition that would

defeat its operative effect, and for this purpose parol evidence is inadmissible."

Appellant assigns error to the action of the trial court in excluding the testimony of Mrs. Lela Fink. No error is assigned to any of the findings of fact or conclusions of law made and entered by the trial court.

We are inclined to the view that the exclusion of Lela Fink's testimony was not error. The agreement signed by Velma Fink seems to be more than a mere recitation relative to the consideration involved in the property transactions. It purports to spell out the consideration involved in Velma Fink's acquisition and her resultant legal ownership of the Richmond Highlands property. This is persuasive that the provisions of the agreement should not be varied by parol testimony. However, be that as it may, it is unnecessary for us to pass directly upon the aspect of the case and the question involved.

As indicated above, we think that the remedy pursued and the relief sought by appellant is equitable in nature. Consequently, applicable principles of equity are controlling.

In *Edison Oyster Co. v. Pioneer Oyster Co.*, 22 Wn. (2d) 616, 157 P. (2d) 302, the court said:

"Laches . . . specifically, . . . is [the] inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances covering prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another."

Coming now to the facts in the present case, it seems to us that these clearly add up to laches on the part of John Fink, the deceased. His son, Lloyd Fink, as administrator, can have no greater interests or rights in the matter than those to which the decedent may have been entitled. The Queen Anne property was given to Velma Fink, the mentally incompetent daughter, on November 15, 1938. Except for the reservation of a life interest by John Fink, the

conveyance was in terms absolute, reciting consideration of ten dollars, love and affection.

John Fink allowed this situation to continue for eleven years, until some time in 1949. He then permitted the property to be sold, and he unquestionably joined in the conveyance thereof because of his life interest therein. Furthermore, he permitted the proceeds of the sale to be used for the acquisition of the Richmond Highlands property in the name of his daughter, Velma Fink, and for the construction of a house thereon. He then permitted the Richmond Highlands property to stand in his daughter's name for approximately three years longer, without making any serious step to unwind the transaction. Even after the death of John Fink in 1952, his son, as administrator of the estate, waited almost three years before doing anything about the matter by the institution of the instant action for declaratory relief.

As we think any equitable relief is clearly barred by laches, the result reached by the trial court was the correct one on this ground, if for no other reason.

The appellant's claim for the reasonable value of labor and services is absolutely untenable, because Lloyd Fink and his wife testified clearly and unequivocally that their labor and services were furnished to John Fink *without any expectation of pay or remuneration.*

The judgment of the trial court should be affirmed.

It is so ordered.

HILL, C. J., MALLERY, DONWORTH, and OTT, JJ., concur.

---

July 1, 1957. Petition for rehearing denied.