[No. 17648.   Department Two.   March 8, 1923.]

C. A. RIDDLE, *as Administrator etc., et al., Respondents,*
v. JAMES F. HENDERSON, *Appellant,* EDITH
HENDERSON, *Defendant.*[1]

GIFTS (8)—EVIDENCE—WEIGHT AND SUFFICIENCY. While a completed gift is not shown by simply causing a note and mortgage to run to the donee, the donor retaining control of the note and making collections; yet, causing title to the mortgaged premises to vest in the donee through foreclosure proceedings clearly distinguishes the case from those lacking as a completed gift.

TRUSTS (3)—EXPRESS TRUSTS—PAROL PROOF—FRAUDS, STATUTE OF. There was an express trust in real estate, which cannot be shown by parol, where a well to do man caused a note and mortgage to be taken in the name of a needy brother, and later vested title in him through foreclosure proceedings, in pursuance of some understanding between them which was not evidenced by any writing.

EXECUTORS AND ADMINISTRATORS (86)—CLAIMS—EFFECT OF FILING —BAR—CLAIM OF TITLE TO REAL PROPERTY. The failure to prosecute a suit against an administrator, upon the disallowance of a claim for the recovery of rent collected by the decedent, does not bar the claimant's defense to the administrator's action to quiet decedent's title to the leased premises, legal title to which was in the claimant.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 13, 1922, upon findings in favor of the plaintiffs, in an action to quiet title, tried to the court. Reversed.

*John F. Reed* and *F. C. Kapp,* for appellant.

*C. A. Riddle* and *James Kiefer,* for respondents.

[1] Reported in 213 Pac. 480.

TOLMAN, J.—This is an appeal from a decree quieting title to certain real estate in King county, Washington, in Ruth Elizabeth Henderson, as devisee of Eder E. Henderson, deceased.

The facts which we find to be controlling are very little in dispute, and may be briefly stated as follows: Eder E. Henderson and Maude E. Henderson were husband and wife, domiciled in the state of Maine throughout their married life. Eder E. Henderson made a number of visits to the state of Washington, without at any time abandoning his domicile in Maine, and acquired property in this state. He died testate at Bangor, Maine, in 1915, leaving an estate in Maine of the value of upwards of fifty thousand dollars, and property in this state of a value of upwards of twenty thousand dollars. The Washington property he, by his will, bequeathed to his daughter, Ruth, and the widow disclaimed any interest therein.

Early in 1910, the decedent purchased the property now in question, and a few months later sold it, his wife joining in the deed, to one Erickson, receiving as payment certain other real property, and notes aggregating $1,500 in amount, secured by a mortgage upon the property sold. These notes and the mortgage securing them he caused to be made payable to his brother, the appellant, James F. Henderson, commonly known as Frank. Decedent caused the mortgage to be recorded, but never delivered the notes to his brother. Immediately after the closing of this transaction as related, decedent wrote and mailed to appellant a postal card as follows:

"Mr. Frank Henderson,
     "Wardsville, Ontario, Canada,
          "Seattle, Wash., July 7th, 1910.
"Dear Frank: Tomorrow I leave Seattle by boat to Victoria and Vancouver then rail to Calgary & Ed-

monton then to Winnipeg. Drop me a letter to General
Del. Winnipeg to get there about 16th July, put on
envelope hold for 15 days. Tell me the block and
street your lots are on and between what streets &
will try & see them & tell you what I think of them.
I made a loan here of $1,500.00 at 8% payable $500.00
in two years from June 27th, 1910, and $1,000 in 3
years from said 27th on house & lot 20, Block 11,
Latona Add. to Seattle, 3938 1st Ave. N. E. This
mortgage and notes runs to you, you understand. Mrs.
Erickson of Seattle is the owner & gave mortgage.
Hope to see you all about last July.          "Eder."
   "Keep this card for information about mortgage.
   "Give me McWilliams address if convenient.
   "Fred S. Phelps of Court House of Seattle is a
friend of mine."

The mortgagor appears to have paid only the first
six months' interest, which was collected by decedent's
local agent, and thereafter decedent gave directions
for the foreclosure of the mortgage, as follows:

                    "Bangor, Maine, July 5th, 1912.
"Smith & Cole, Boston Block, Seattle, Wash.
   "Gentlemen: Yours of June 19th recd. Proceed in
name of James F. Henderson as you indicate. I shall
pay balance of your fee and all communications will
come from me. I hope that you have been able to get
the abstract of Erickson or now Ellis property. He
should give up pleasantly this abstract as he stated
he could not pay attachments as it would be cheaper
for him to give up the property.
   "In your letter you state that no indorsement is on
either of those notes (1,500 notes). I think my agent
Mr. Bell collected from Mr. Ellis in Feby. 1911 $60.00
interest. The first and only payment that was made on
the notes. This $60.00 is the first six months' interest
on the notes.                    Yours truly,
                    "E. E. Henderson.
   "P. S.—I believe the house is rented and has been
since Ellis owned it. I wonder who gets the rent money.

I should like to have had the pleasure of meeting Mr. Smith while he was in the east.    E. E. H."

A complaint in foreclosure was duly prepared, in which appellant was named as sole plaintiff, and which alleged that the notes were executed and delivered to him, and that he was still the owner and holder thereof, which complaint was verified by one of the attorneys on appellant's behalf. In due course, a decree of foreclosure was entered in appellant's favor, the property sold thereunder, bid in in his name, and, there being no redemption, in due time a sheriff's deed was issued to appellant, which was filed for record by one of the attorneys representing him in the foreclosure action. Before the sheriff's deed issued, some sale or exchange of the property seems to have been contemplated, and at decedent's request, in September, 1913, the appellant executed an assignment of the sheriff's certificate of sale to one Wheeler, and sent the assignment to decedent, but this assignment was never used, and in the absence of evidence as to who would have received the consideration had the transaction been completed, this assignment, so called, seems to be now inconclusive.

There is other evidence as to statements made by decedent to the wife of appellant; as to transactions respecting other property located in Maine; that the wife of decedent was a comparatively wealthy woman in her own right; that appellant was a poor man, rather involved financially; that decedent quite frequently paid him long visits, and was cared for at his home during a protracted and serious illness, and there is evidence from which the inference may be drawn that a strong affection and mutual confidence existed between the brothers; but these matters are not of sufficient weight to require more than mere mention.

It is the contention of appellant that the transaction constituted a gift to appellant, was so intended, and

that decedent, by his deliberate and premeditated acts, placed the property beyond his power to recall it, and fully completed the gift; or, in any event, if there was any trust created, it was intentionally created and was, therefore, an express trust relating to real property, the terms of which cannot be shown by parol.

It may be admitted that the simple causing of the notes and mortgage to be made payable to appellant, without the delivery of the notes, together with the retaining of control, collection of interest, and general supervision, lacks something of constituting a completed gift as defined in *In re Slocum's Estate,* 83 Wash. 158, 145 Pac. 204, though there the presumption of the community character of the property obtained and could only be overcome ". . . . by evidence of a clear, certain, and convincing character"; but in this case, after the taking of the notes and the recording of the mortgage, decedent caused the title to vest in the appellant through and under foreclosure proceedings which he put in operation, and those subsequent acts clearly distinguish this case from the cases of *Anderson v. Hall,* 91 Wash. 376, 157 Pac. 996; *Jackson v. Lamar,* 67 Wash. 385, 121 Pac. 857; and *Sturgis v. McElroy,* 113 Wash. 192, 193 Pac. 719, upon which respondents chiefly rely.

Whether the facts shown justify the holding that the gift was completed need not now be determined, because, in any event, it appears without contradiction that decedent, by and through an express understanding, caused the title to the property to vest in the appellant, just as effectively as though he himself had conveyed it by deed. That this was done intentionally and in pursuance of some understanding between the brothers is shown by the written exhibits which have been quoted, as well as by decedent's general course of conduct with reference to the matter. If, instead of a

gift, a trust was intended, it was a trust created intentionally and by contract of the parties, and decedent had full opportunity to cause the terms of it to be evidenced by a declaration of trust, or other writing, which would have protected his rights, if any, whether he be living or dead. The trust, therefore, if there was one, was an express trust as defined in *Farrell v. Mentzer,* 102 Wash. 629, 174 Pac. 482, and comes within the operation of the statute of frauds, as there so clearly indicated. The whole subject is so exhaustively treated in the *Farrell* case that there remains nothing further which need be now said.

But it appears that, in May, 1917, appellant presented to the then administrator of decedent's estate a claim for the rents collected during decedent's lifetime, which claim was rejected, and no suit was brought thereon within the time limited by statute, or at all. This is now urged as a bar to the prayer of the answer and cross-complaint for recovery on account of such rentals, and also as a bar to the present claim of title. The claim for money had and received in that manner could, we think, be abandoned at any stage of the proceedings without affecting the title to the real estate which produced the rents. Of course, no civil action can now be maintained to recover any part of the rejected claim. *Nash v. Wakefield,* 30 Wash. 581, 71 Pac. 35. But the extinguishment of that claim cannot divest, or in any manner affect the title of the real estate, which, as we have seen, had already vested.

The judgment appealed from is reversed, with directions to enter a decree establishing appellant's title to the real property here involved.

MAIN, C. J., PEMBERTON, and PARKER, JJ., concur.