[No. 19920.  Department Two.  October 14, 1926.]

CECIL M. RENNIE, *Appellant* v. WASHINGTON TRUST COMPANY, *Respondent.*[1]

[1] EXECUTORS AND ADMINISTRATORS (144)—RIGHT OF ACTION AGAINST EXECUTORS AND ADMINISTRATORS—PERSONAL OR REPRESENTATIVE CAPACITY. An action lies against an administrator, either in his individual or representative capacity, to recover money or property wrongfully withheld belonging to the plaintiff; notwithstanding Rem. Comp. Stat., § 1518, providing that such actions may be maintained by and against executors and administrators in all cases in which they might have been maintained by or against their testators or intestates, which is merely a survival statute not affecting the common law right of action.

[2] GIFTS (2)—WILLS (11)—DISTINGUISHED FROM OTHER TRANSACTIONS. A writing conveying all interest in the grantors properties, and duly acknowledged as such, will not be held to be of a testamentary character and void as a will, because it contains some clauses characteristic of a will, where the instrument as a whole does not show that it was intended as a testamentary disposition of property.

[3] GIFTS (4)—DELIVERY—SUFFICIENCY. A written instrument duly executed and delivered, constituting a gift *inter vivos* of all the donor's property, is not void for lack of delivery of the property, where the property was not capable of manual delivery.

[4] GIFTS (1)—REQUISITES—WRITINGS—DESCRIPTIONS. A written instrument intended as a gift *inter vivos*, conveying "everything that I now own or possess" is not void for lack of a sufficient description of the property.

[1]Reported in 249 Pac. 992.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered March 10, 1926, dismissing an action against an administrator in its individual capacity, upon sustaining a demurrer to the complaint. Reversed.

*Danson, Lowe & Danson,* for appellant.

*F. C. Highsmith* and *Davis, Heil & Davis,* for respondent.

MAIN, J.—The plaintiff by this action claimed the right to certain money and property in the possession of the defendant as the representative of the estate of Wirt W. Saunders, deceased, and brought this action for a money judgment after the defendant declined to turn the money and the property over to her. To the second amended complaint, which will be referred to as the complaint, a demurrer was interposed and sustained. The plaintiff declined to plead further and elected to stand upon the complaint. A judgment was entered dismissing the action from which the plaintiff appeals.

On June 22, 1924, Wirt W. Saunders died. Subsequently, the appellant was appointed and qualified as administrator *de bonis non* with the will annexed of decedent's estate. There came into the possession of the respondent approximately nineteen thousand dollars in cash and a real estate contract of the alleged value of sixteen hundred dollars. The money and the contract were claimed under a writing which is attached to the complaint and made a part thereof and which is in words and figures as follows:

"TO WHOM IT MAY CONCERN.

"KNOW ALL MEN BY THESE PRESENTS: That I, Wirt W. Saunders, do hereby make the following statements, bequeaths and gifts:

"That I executed to Cecil M. Rennie, on the 18th day of June, 1924, a certain instrument in writing of power of attorney, the same being duly signed by me in the presence of the subscribing witnesses thereto, and that the same was acknowledged by me as my free and voluntary act and deed in the presence of a notary public, who thereunto placed his signature and seal:

"That in making and executing the said power of attorney to the said Cecil M. Rennie, that she shall act for me fully and completely, to retain, keep, possess and hold to her full use and benefit the properties and proceeds thereunder;

"In consideration of the kindness, care, treatment, and attention shown to me by the said Cecil M. Rennie, and these presents are based thereupon, I do hereby give, grant, and bequeath unto the said Cecil M. Rennie, to have, keep and retain for her sole use and benefit everything that I have, own or possess;

"That I hereby, for myself and my heirs, so assigning and transferring to the said Cecil M. Rennie, all my right, title, ownership and interest in and to the said properties that I possess or may become possessed of, hereby ratifying each and every act hereof;

"That the said Cecil M. Rennie shall have for her sole use, purpose and benefit the said properties of each and every kind and nature as herein provided by me.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 18th day of June, 1924.

(his mark)

WIRT W. SAUNDERS.     (Seal)

Executed in the presence of
us as subscribing witnesses.
Harry J. Anderson, M. D.
(Signed)  C. M. Leedham-
Fuller
STATE OF OREGON,
County of Benton.
ss.

"BE IT REMEMBERED, That on this 18th day of June, A. D. 1924, before me, the undersigned, a notary public, in and for said county and state, the within named

Wirt W. Saunders who is known to me to be the identical individual who is described in and who executed the within instrument, and acknowledged to me that he executed the same freely and voluntarily.

"IN TESTIMONY WHEREOF, I have hereunto set my hand and seal this 18th day of June, 1924.

                    (Signed) "HARPER MECKLIN,
                        "Notary Public for Oregon.
                        "My commission expires Feb.
(Notarial Seal)        14th, 1926."

It is upon this writing that the appellant bases her action, together with the refusal of the respondent to turn over to her the money and property above mentioned. It will be noticed that the action is against the respondent in its individual capacity and not as a representative of the estate of Wirt W. Saunders, deceased.

[1] The appellant contends that she had a right, if the money and property belonged to the appellant and the respondent refused to turn it over, to maintain an action, at her election, either against the respondent individually or in its representative capacity, and she elected to sue the respondent individually. Some courts have held that, in cases of this kind, the action could only be brought against the one who was representative of the estate in his individual capacity. The courts of last resort of three or four states have held that the action could only be maintained against the administrator or executor in his representative capacity. Other courts have held that the one having the right to the property could maintain an action against the administrator or executor either in his representative capacity or individually. In other words, the administrator or executor would be liable both in his individual and representative capacity. In 24 C. J. p. 742, it is said:

"If a personal representative takes property not belonging to the estate, he has no right to it in his rep-

resentative capacity. Consequently, as a general rule, his refusal to restore it to the rightful owner renders him individually liable, and he cannot be sued in his representative capacity for his individual tort. There is, however, authority for the view that a representative who, acting on behalf of the estate and claiming in his representative capacity, secured possession of and refused to surrender property which in reality does not belong to the estate, may be held liable for the wrong in his representative, as well as in his individual capacity. It has also been held that, where one to whom the property was given by a decedent surrendered it to the personal representative on demand, without disclaiming or making a gift or sale to the personal representative, the donee might waive the tort and bring suit in assumpsit for the value of the property against the representative in his individual or representative capacity. Where the property of a third person has passed from the possession of decedent into the possession of his personal representative, the latter is liable in his individual capacity for the detention thereof, but it is generally considered that under such circumstances he may also be held liable in his representative capacity, although this has been denied."

This court in *Collins v. Denny Clay Co.*, 41 Wash. 136, 82 Pac. 1012, adopted the rule that the action might be maintained against the executor or administrator either in his individual or representative capacity. It was there said:

"It is contended that, if the executor converted his stock, or wrongfully received dividends thereon which belonged to others he is liable in his individual and not in his representative capacity. This stock stood in the name of the decedent at the time of his death, and came into the hands of his executor as a part of his estate. Under such circumstances the more equitable rule is that if the executor or administrator applies to the use of the estate money or the proceeds of property belonging to a third person, he is liable in both

his individual and representative capacity, and the in-
jured party may elect whether he will hold him in the
one capacity or the other.    Respondents elected to
pursue the executor in his representative capacity, as
they had a right to do; but having followed that course,
they can only take such judgment as the law authorizes
in such cases.''

The great majority of the courts have adhered either
to the rule of individual liability or to the liability in
both capacities.  It is sought to distinguish the *Collins*
case from the present, but we think that the rule of that
case was deliberately adopted by the court and is con-
trolling on the question.    The court was there con-
sidering what rule it would adopt and put in unequivo-
cal words its thought on the question.  It would serve
no useful purpose at this time, in view of that holding,
to review the many decisions on the question.

The respondent seeks to distinguish the cases hold-
ing that the executor or administrator may be sued
either individually or in both capacities by suggesting
that in those cases, or some of them at least, the prop-
erty was wrongfully acquired by the executor or ad-
ministrator.    It can make no difference whether the
property was rightfully acquired by the personal repre-
sentative of the deceased, because the right of action
arises when there is a wrongful refusal to turn over to
a third person money or property which belongs to him
and not to the estate.  In this case, if the money and
the contract belonged to the appellant, then a tort was
committed when the refusal was made to turn the same
over to her.

The respondent contends, however, that under the
statutes of this state the action could only be main-
tained against an executor or administrator in his
representative capacity.    Rem. Comp. Stat., § 1518

[P. C. § 9886], seems to be the one that is chiefly relied upon in this connection and provides as follows:

"Actions for the recovery of any property or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases in which the same might have been maintained by and against their respective testators or intestates."

This, apparently, is a survival statute and does not, either expressly or by necessary implication, take away the common law remedy to maintain an action against the executor or administrator individually. In 25 R. C. L., p. 1058, it was said:

"An existing common law remedy is not to be taken away by a statute unless by direct enactment or necessary implication. A statute which enlarges the remedy which the common law affords and extends it to cases for which there was no remedy at common law does not take away the common law remedy; when a duty is required and no remedy provided for its breach, the remedy is by common law procedure. Where a statute prescribes a remedy for a matter that is actionable at common law, without excluding the common law remedy either expressly or by necessary implication, the statutory remedy is regarded as merely cumulative and either the common law or the statutory remedy may be pursued."

The other sections of the statute relied upon need not be here reviewed, because they have less bearing upon the question than does the one above set out.

The action was properly brought against the administrator in its individual capacity.

[2] The respondent further contends that the writing above set out gave to the appellant no right to the money or the contract in question. Its first position is that the instrument is testamentary in its character and not having been properly executed it could have no validity. Whether an instrument is testamentary in

character depends upon the intention of the maker. In 28 R. C. L., p. 59, it is said:

"Whether or not an instrument is testamentary in character depends upon the intention of the maker. It is the animus testandi that makes an instrument a will. When the animus testandi is established, the character of the instrument is fixed and it is a will if the other requirements as to form and execution have been complied with. In the absence of a testamentary intent, there can be no will. Furthermore the animus testandi must exist when the instrument is executed or acknowledged, and the intent must apply to the particular instrument produced as a will. A paper is not established as a man's will merely by proving that he intended to make a disposition of his property similar to or even identically the same as that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will. The animus testandi may however be implied, and if an instrument speaks for itself and is by its terms a testamentary disposition of property, the law will presume that the maker signed it understandingly and intended it as his will, if legal proof is furnished of its execution. On the other hand a will cannot be established by merely showing an intent to make one."

In the present case, while there are some words or clauses in the writing which are characteristic of a will, there are others which are characteristic of a contract or conveyance. Reading the entire instrument, together with the manner of its execution, it cannot be held that the writing itself shows that it was intended to be a testamentary disposition of property. In the absence of a testamentary intent, there could be no will.

[3] However, the respondent says that if it was not intended to be a will, then it was an attempt to make a gift *inter vivos,* and this must fail for two reasons: First, because there was no delivery and, second, be-

cause there was an insufficient description of the property. As to the necessity for delivery reliance is placed upon the rule that to constitute a completed gift *inter vivos* there must be such a delivery of the property that the title thereto is irrevocably vested. This rule, however, is not controlling where there has been delivery of a written instrument transferring the property. In 28 C. J. p. 637, it is said:

"The general rule is that a gift of property evidenced by a written instrument executed by the donor is consummated by a delivery of the instrument without a manual delivery of the property, especially where it is not in the power of the donor to make a manual delivery. Thus a gift of chattels or choses in action by deed is made complete and valid by delivery of the deed alone, without an actual delivery of the chattels or evidence of the choses in action."

In *Hamlin v. Hamlin*, 59 Wash. 182, 109 Pac. 362, it was held that a written assignment of a note and mortgage was a sufficient delivery to consummate a gift *causa mortis*.

[4] As to the other objection, that of insufficient description, it will be observed that the writing itself undertook to give to the appellant for her sole use and benefit "everything that I now own or possess." In *Lewis v. Kinnaird,* 104 Md. 653, 65 Atl. 365, it was held that a deed which described property as "all the property and estate whatsoever and wheresoever situate and being and wheresoever the same may have been acquired" contained a description sufficiently definite so that the property was subject to be identified with reasonable certainty. In *Pettigrew v. Dobbelaar,* 63 Cal. 396, it was held that land there in controversy passed under a deed the descriptive clause of which was "all lands and real estate belonging to the said party of the first part, wherever the same may be situated." It was there said:

"Appellant also urges the second deed from Harvey to Lacey contains no description, and is void. The descriptive clause is, 'all lands and real estate belonging to the said party of the first part, wherever the same may be situated, together,' etc.

"If the lands in controversy belonged to Harvey they passed by the deed last mentioned."

In *Newman v. Buzard,* 24 Wash. 225, 64 Pac. 139, it is said:

"Parol evidence is, and must of necessity be always, admissible to identify the property described in and conveyed by a deed, to ascertain to what property the particulars of description in the deed apply."

The instrument here in question, if it be construed as an attempt to make a gift *inter vivos,* was not void for lack of delivery or for uncertainty or indefiniteness in the description. The appellant does not acquiesce in the view that there was an attempt to make a gift *inter vivos,* but her construction of the instrument is that it was a present conveyance of all the property then owned by the maker thereof and was based upon the consideration recited therein. Looking solely to the instrument itself, it would seem that this is the most reasonable construction to put upon it.

The judgment will be reversed, and the cause remanded with direction to the superior court to overrule the demurrer.

TOLMAN, C. J., MITCHELL, PARKER, and MACKINTOSH, JJ., concur.