[No. 19769. Department One. October 14, 1926.]

*In the Matter of the Estate of* CHARLES KIRKPATRICK, *Deceased.*

NELLIE CULLEN, *Respondent,* v. ROY L. CADWALLADER, *Respondent,* FRED KIRKPATRICK *et al.,* *Appellants.*[1]

[1] GIFTS (4)—DELIVERY—INTENT OF DONOR. An intent to make a present gift *inter vivos* appears where the donor, who was ill, executed deeds to his sister and delivered them to a third person to control until his death and to deliver them to the grantee.

[2] COSTS (20, 22-1)—PERSONS ENTITLED AND FUNDS LIABLE—PERSONS NOT PARTIES. It is discretionary to assess costs against heirs in favor of successful contestants claiming estate in the hands of the administrator, who represented the heirs actively waging the contest.

Appeal from a judgment of the superior court for King county, Smith, J., entered September 18, 1925,

[1]Reported in 249 Pac. 980.

upon findings in favor of the plaintiff, in a contest involving the assets of a decedent's estate. Affirmed.

*McClure & McClure* and *W. S. Osborn,* for appellants.

*Hastings & Stedman* (*Lewis S. Stedman,* of counsel), for respondent.

ASKREN, J.—In March, 1919, Charles Kirkpatrick executed valid conveyances by deed and assignment of his property to his sister, Nellie Cullen. Their previous relations were such as to justify a gift from him to her. At the time of the execution of the conveyances, he was very ill, due to heart trouble, and he sent for his lawyer, who advised him that he could execute conveyances and deliver them immediately to his sister putting her in immediate physical possession of the properties, or could place the instruments of conveyance in the hands of a third party beyond his (Kirkpatrick's) control, with instructions to deliver upon his death; that if he chose the latter course he could retain the use and benefit of the properties until his death. He decided upon the latter method and delivered the instruments to his lawyer, Mr. Hastings, with instructions to hold until his death, and then deliver to Nellie Cullen. At the same time he signed a letter which was to be delivered to the sister with the conveyances—

"I have this day placed in escrow with H. H. A. Hastings transfers of all of my property interests in Washington and in Oregon, to be delivered to you by said escrow holder in the event of my death. This property is given to you in appreciation of your kindness to me and is to be your sole and separate property."

Kirkpatrick recovered from the apparently fatal stage of illness which then beset him, and lived for a

period of something over five years thereafter, although he never recovered from the disease itself. He was employed by the Seattle public schools and was paid a salary all the time thereafter, with the exception of two or three months. He took trips abroad during his summer vacations.

One of the properties so deeded to Nellie Cullen was being purchased on contract, and the payments were made thereafter by Kirkpatrick and the property resold to one Backley, and the payments received by Kirkpatrick. He also received payments on the contract for the sale of another piece of property to one Bailey, and executed a deed therefor after a certain amount had been paid, and received a mortgage and note in his favor for the balance.

It appears that he was able to and did handle his business affairs personally. In 1923, Hastings asked Kirkpatrick if he desired to recall the deeds and he answered:

"No. You remember the instructions I gave you when those deeds were delivered? Those instructions were intended to be final; and if I should pass away, which is liable to happen at any time, I want you to see she gets these documents."

On one occasion before his death, he said to Nellie Cullen in the presence of a witness: "Well, you know what is mine is yours, Nell." Again, referring to one of the properties when the purchaser was behind in his payments, he said to her:

"Every time I go out there he gives me some kind of a story and that is as far as it goes, and you are really interested as much as I am. I wish you would go out and see what you can do with him."

In 1924, while on a visit in the east, Kirkpatrick died, and the administrator inventoried the property which had been sold to Backley, the mortgage and

note due from Bailey, and cash on deposit in a savings bank, as estate properties. Nellie Cullen then petitioned the court claiming that the Backley property and the Bailey note and mortgage were gifts from her brother to her, and that the cash on deposit represented payments made on other property transferred to her by him in 1919.

Upon petition of the administrator, a guardian *ad litem* was appointed for Robert M. Dick, only child of a deceased sister. The only other heir besides the minor and petitioner is Fred Kirkpatrick, a brother.

Upon a trial of the issue, the court held that there had been a gift *inter vivos* of the properties in question, and ordered them stricken from the estate inventory, and assessed the costs of the proceeding to the shares of the minor and brother, with provision that any deficiency should be assessed against the brother personally. The brother and the minor appeal and present two questions: First, Did the evidence show a gift *inter vivos?* and secondly, Was the court within its power under the evidence in assessing costs against the contestants?

[1] They contend that the evidence did not establish a gift *inter vivos,* because under the weight of authority such a gift is one in which the gift takes effect immediately, although the physical possession may be retained until a future date. The rule applicable to this case is well stated in 28 C. J. p. 648:

"A gift of property to take effect after the donor's death, the donor in the meanwhile retaining the control and dominion of the property, cannot be sustained. Such gifts are in contravention of the statutes governing the testamentary dispositions of property. It is not necessary that the condition that the property shall not pass until the death of the donor be expressly stated, in order to invalidate the gift as one *inter vivos,* it being sufficient if the condition is implied. On the

other hand, if the gift is absolute, the mere postponement of the enjoyment until the death of the donor is not material and will not defeat it.''

This question has been before us a number of times for consideration, notably in *Matson v. Johnson,* 48 Wash. 256, 93 Pac. 324, 125 Am. St. 924; *Maxwell v. Harper,* 51 Wash. 351, 98 Pac. 756; *Showalter v. Spangle,* 93 Wash. 326, 160 Pac. 1042, and *White v. Chellew,* 108 Wash. 628, 185 Pac. 621.

In *Maxwell v. Harper, supra,* this question was disposed of in the following language:

"The question of the delivery or nondelivery of a deed is one that must be governed by the intent of the grantor. *Matson v. Johnson,* 48 Wash. 256, 93 Pac. 324. Such intent must be gathered from the terms of the deed itself, if it can be consistently done. If the language used is susceptible of more than one construction, that one must be adopted which militates most strongly against the interests of the grantor. Devlin, Deeds, § 848. . . . A grantor's deposit of his deed with a third party, to be held by such third party until the grantor's death and then delivered to the grantee therein named, the grantor reserving no dominion or control over the deed during his lifetime, constitutes a valid delivery and vests an immediate estate in the grantee, subject to a life estate in the grantor."

The difficulty of applying the rule always comes from the particular circumstances surrounding the gift. Appellants argue that, because of impending death, there was an intention to make a gift *causa mortis;* and that, since the donor did not die, the gift became ineffectual. This is a strong circumstance to be taken into consideration in determining whether there was a present gift of the property in question. The collection of, and the making of payments on, the property thereafter have a strong bearing upon whether there was ever an intention to presently de-

vise, although it may well be argued that such action is as consistent with a retention of a life estate as it is with absolute ownership. From an investigation of our own cases and the authorities generally, the important factor to be established is the donor's present intention. Or, to state the question in a little different form, did the donor intend to, and did he give *now*, retaining the use to himself through life, or did he intend to give *upon his death*.

The testimony upon this point was given by the witness Hastings to whom was entrusted the deeds of conveyance. He testified that he explained that, if the deeds were placed in the hands of a third party with absolute authority to deliver them to Mrs. Cullen upon his death, they would be valid. He then asked Mr. Kirkpatrick if he wanted his sister to have all the property which he described, and he answered:

"Yes, I want it to be hers, but I don't want the deeds delivered to her until my death."

After the deeds were executed, Kirkpatrick handed them to Hastings, saying:

"You are to hold these now under your control until my death and then you are to deliver them to Mrs. Cullen."

This evidence indicates a clear intention to make a present gift of the property by placing it in the hands of a third party without control of the conveyance by the donor, although retaining the use of the properties themselves.

Appellants urge that this testimony cannot be conclusive because of the later conversation heretofore referred to in which the witness asked Kirkpatrick if he desired to recall the deeds. This circumstance indicates a belief in the mind of the witness that Kirkpatrick still held some control over the deeds in question; but such erroneous belief cannot vitiate the gift,

if it was made as testified to by the witness. *Maxwell v. Harper, supra.* While this fact may tend to discredit the witness' memory as to the language used at the time of the execution and delivery of the deeds to him, yet we cannot say, in the face of the positive and unequivocal statements that the control of the deeds was distinctly understood to be his and not Kirkpatrick's, that the testimony is not entitled to the weight evidently given it by the trial court.

[2] It is contended by appellant that the court was in error in assessing costs against the two heirs. It is claimed that it was necessary to determine the question of the validity of the deeds of conveyance, and that therefore it was the duty of the administrator to resist the petition of Nellie Cullen. Investigation of the record shows that the testimony of some twenty-two witnesses was taken to determine this matter, two of them by deposition. The record, taken as a whole, discloses a spirited contest over the matter in issue, and we can hardly say that it is that character of a case where the administrator, because of his duty to the estate, has required proof of the facts alleged in the petition. It rather partakes of an issue between the heirs and the petitioner. It is admitted that this is one of those cases where assessment of costs is within the discretion of the trial court. The record is not such that we are able to say from a reading of it that the court abused its discretion in assessing the costs in the manner indicated.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, FULLERTON, and BRIDGES, JJ., concur.