[No. 28999. *En Banc.* December 6, 1943.]

*In the Matter of the Estate of* PATRICK CUNNINGHAM, *Deceased.*

CORNELIUS J. DERMODY, *Respondent,* v. PATRICK DERMODY, *Individually and as Executor, Appellant.*[1]

[1] Reported in 143 P. (2d) 852.

*Padden & Moriarity* and *Melvin T. Swanson,* for appellant.

*Colvin, Rhodes & Franklin,* for respondent.

MALLERY, J.—This is an appeal from the judgments in two consolidated superior court cases. One was an action brought by Cornelius J. Dermody against Patrick Dermody, as executor of the estate of Patrick Cunningham, deceased, to quiet title in the plaintiff to certain real estate. The other was an action by Patrick Dermody, individually, in which he asserted the gift of certain Puget Sound Power & Light Company stock from the deceased, Patrick Cunningham.

The facts in the first case are that Patrick Cunningham, who was the uncle of Cornelius J. Dermody, commonly called "Neil," purchased a city lot, which will hereafter be referred to as the Brandon street property, from Georgia

Perkins, August 3, 1931. He had Neil Dermody named as grantee in the deed and, by his own signature, presented the deed for recording with the county auditor. At the time of executing the deed, he told Mrs. Perkins:

"I am having the deed made out to my nephew as a gift to him, because I am going to live with him afterwards, and I am giving this to him and I am going to have a house and I am going to live with him, now."

Thereafter, Cunningham built a house upon the lot and told the witness, Howard Miller, from whom he purchased the lumber for the house, that he was building the house for his nephew. Several witnesses testified that he always called the property "Neil's property." A tenant of the property testified that he said it was Neil's house; that he bought the lot and built the house for Neil Dermody; that she, as tenant, had paid the rent at different times to both Neil Dermody and Mr. Cunningham; and that Neil Dermody had fixed the drains and cleaned out the sink many times. Another tenant testified that, upon inquiring of Cunningham about buying the house, he had said he built it and gave it to his nephew and it was not for sale. It appears that Cunningham had expected to live with Cornelius Dermody and his wife in the house, but, when Mrs. Dermody saw the property, she did not like the locality and would not live in the house.

Later, Cunningham proposed that Cornelius Dermody and wife move into a house that he owned on 8th avenue. This was done and Cunningham lived there with them until his death. Cunningham collected and kept the rent on the Brandon street property, and Cornelius Dermody and wife paid no rent for the use of the 8th avenue property and kept the rent received from a roomer there. Cunningham paid the taxes and insurance and repairs on the Brandon street property, and took out the building permit for the house in his own name as owner, contractor, and architect.

Mrs. Dermody testified to the effect generally that they considered Cunningham the "boss" and in control of the property and did not want to interfere; that she did not like

the house or the location and refused to live in it and would not do so even now.

■ From all the evidence in the case, it seems clear that, when Cunningham paid for the property, he intended to make a gift of it to his nephew Cornelius Dermody. It is equally clear that he exercised dominion and control over the property during his lifetime.

The following principles of law relating to a gift of real estate are settled by this court:

■ Where one pays the consideration, and real property is deeded to another, a resulting trust is presumed in favor of the one paying the consideration; but only in absence of other evidence of intent. *Scott v. Currie,* 7 Wn. (2d) 301, 109 P. (2d) 526.

Evidence having been introduced of the intention of donor to make a gift, the presumption ceases to exist. *Bradley v. Savidge, Inc.,* 13 Wn. (2d) 28, 123 P. (2d) 780.

■ Where the property is deeded to one the natural object of the donor's bounty, a gift rather than a trust is presumed. *Scott v. Currie, supra; Dines v. Hyland,* 180 Wash. 455, 40 P. (2d) 140.

■ While a resulting trust may be proven by parol, it may be established only by evidence, clear, cogent, and convincing, and the burden is on him who asserts the trust. *Dines v. Hyland, supra; Scott v. Currie, supra.*

■ The character of the transaction is determined as of the time of conveyance; the status of the property is fixed either as a gift or a trust at the time grantee takes title. The intention of the donor is determined as of the date of the deed. *Dines v. Hyland, supra; Scott v. Currie, supra; Croup v. DeMoss,* 78 Wash. 128, 138 Pac. 671.

■ An express trust in real estate cannot be established by parol testimony. *Farrell v. Mentzer,* 102 Wash. 629, 174 Pac. 482; *Carkonen v. Alberts,* 196 Wash. 575, 83 P. (2d) 899, 135 A. L. R. 209; *Zioncheck v. Nadeau,* 196 Wash. 33, 81 P. (2d) 811; *Riddle v. Henderson,* 124 Wash. 31, 213 Pac. 480.

■ A valid gift of the fee of real estate may be made

*inter vivos,* donor retaining the use, management, and control of the property during his lifetime. *Rennie v. Washington Trust Co.,* 140 Wash. 472, 249 Pac. 992; *In re Kirkpatrick's Estate,* 140 Wash. 452, 249 Pac. 980; *Jackson v. Lamar,* 67 Wash. 385, 121 Pac. 857; *Riddle v. Henderson,* 124 Wash. 31, 213 Pac. 480; *Maxwell v. Harper,* 51 Wash. 351, 98 Pac. 756.

This may be effected by donor's delivering deed to third party for delivery to donee at donor's death if donor irrevocably parts with possession of deed. *In re Kirkpatrick's Estate,* 140 Wash. 452, 249 Pac. 980; *Rennie v. Washington Trust Co.,* 140 Wash. 472, 249 Pac. 992; *Maxwell v. Harper,* 51 Wash. 351, 98 Pac. 756. It is likewise effected by donor himself causing the deed to be recorded.

▆ Appellant relies most strongly upon *Dines v. Hyland, supra.* This court in that case affirmed the judgment of the lower court in finding that the proof was sufficient to establish a resulting trust. In the instant case, the trial court has found that the proof was insufficient to establish a resulting trust. There are many similarities between that case and the instant one, but we think there are some material distinctions. In the *Dines* case, there was no evidence showing the intention of the donor at the time the deed was made. In the instant case, there is ample testimony to show the intention of Cunningham to make a gift of the property to Dermody. In the *Dines* case, the dominion and control over the property was in no way qualified, it going even to the extent of disposing of part of the property. In that connection, the court said:

"Her acquiescence in the trade of the one hundred forty acres in 1927 is utterly incompatible with her claim of ownership, for her uncle took title to the property received in trade, and appellant has never questioned his right or title to it."

Taking title in his own name, is equally incompatible with an intention by the uncle to make a gift of the property.

In the instant case, there is no persuasive testimony to negative Cunningham's intention to give nor of Dermody's

reliance thereon. In the light of Mrs. Dermody's dislike of the property and the fact that they lived in Cunningham's other house, rent free, there is no incompatibility between a gift and an exchange of the use of the Dermody's house for the use of Cunningham's 8th avenue property.

Keeping in mind the rules governing gifts and resulting trusts, we are not prepared to say that the affirmance of the judgment in the *Dines* case, which held that the proof was sufficient, requires us to reverse the judgment of the lower court in the instant case, which held that the proof was insufficient to establish a resulting trust, even though we adhere to all the principles of the law laid down in that case.

The finding by the court of a valid gift is the only error assigned in this case. The judgment is affirmed.

In the other case, Patrick Dermody appeals from the judgment of the trial court which found that there was not a valid gift of Puget Sound Power & Light Company stock, made by Patrick Cunningham during his lifetime, to the appellant as an individual. That finding is the only assignment of error made in this case. It appears that, after the death of Patrick Cunningham, there were found among his papers stock certificates, and, on separate instruments, assignments of the certificates to Patrick Dermody. Patrick Dermody, as executor, filed an inventory which included the shares of stock, as belonging to the estate, and later filed a final report and petition for distribution, in which he asked that this stock be distributed as part of the estate.

One of the essential elements to make a valid gift was a delivery of the stock. It is not sufficient that the assignments, which were made ten years prior, were found among the papers of the deceased. Patrick Dermody testified that, at one time at his home, while Patrick Cunningham was visiting there, he drew from his pocket a large envelope containing the two stock certificates with executed assignments to Patrick Dermody attached. Cunningham, in handing them to Dermody, said, "I am giving these to you now, the Puget Sound Power & Light Company's stock, which I have turned over to you." Dermody said to Cun-

ningham, "You had better keep it yourself, because I have no room in my safe deposit box, because it is a very small box that I have got." Cunningham said, "Very well."

This testimony was rightly held by the court to be incompetent under Rem. Rev. Stat., § 1211 [P. C. § 7722]. The trial court had the right to weigh the testimony of appellant's wife and find that it alone was not sufficient evidence to prove the gift. *Meyer v. Campion,* 120 Wash. 457, 207 Pac. 670.

The judgment in this case is also affirmed.

BEALS, STEINERT, ROBINSON, JEFFERS, and GRADY, JJ., concur.

BLAKE, J. (dissenting in part)—Mere intention to give is not sufficient to effectuate a gift. The donor must relinquish all dominion and control over the subject matter whether it be real or personal property. This the deceased did not do either with respect to the real estate or the certificates of stock.

Where one buys property with his own funds and takes title in the name of another, the presumption is that a resulting trust is created, unless title to the property is taken in the name of wife or child or one to whom the purchaser stands in *loco parentis,* for whom he is under moral or legal obligation to provide. But, unless such relationship does exist, no presumption of gift arises. *Adley v. Pletcher,* 55 Wash. 82, 104 Pac. 167; 1 Perry on Trusts (7th ed.), § 143; 3 Pomeroy's Equity Jurisprudence (4th ed.), § 1039. Certainly, the evidence in this case does not warrant the conclusion that the deceased either stood in *loco parentis* to respondent or that he (deceased) was under any moral or legal obligation to provide for him. Consequently, no presumption of gift arose simply because deceased took title in respondent's name.

Laying the presumption aside, the evidence shows nothing more than an intention to give. This without delivery of and relinquishment of dominion and control over the property is insufficient to effectuate a gift. Respondent was

merely holder of the legal title as trustee for Cunningham. Under the admitted facts, there can be no question that the latter, during his lifetime, could have compelled a conveyance to himself or to any grantee he might have designated. In so far as the judgment establishes a gift of the real estate, I think it should be reversed.

SIMPSON, C. J., and MILLARD, J., concur with BLAKE, J.