[No. 30804.    Department Two.    April 19, 1949.]

GEORGE LEVAS *et al., as Executors, Appellants,* v. EDNA E. DEWEY *et al., Respondents.*[1]

[1]Reported in 205 P. (2d) 356; 213 P. (2d) 933.

*Christ D. Lillions,* for appellants.

*Warren Hardy,* for respondents.

*George Rummens,* for respondents on rehearing.

SCHWELLENBACH, J.—Plaintiffs, as executors of the estate of John Levas, deceased, commenced action against the defendants for the balance due on their promissory note executed July 7, 1945, to Levas, and for foreclosure of a real-estate mortgage given to secure the note.

Defendants answered, admitting the execution of the note and mortgage. By way of affirmative defense, defendants alleged that on November 26, 1947, it was orally agreed between Levas and the defendants that the defendants would execute their wills, which would provide that, upon the death of both defendants, Levas should be paid in cash any balance remaining due on the note out of the proceeds of defendants' life insurance, and that, in return, Levas would make, execute, and deliver to Warren Hardy, attorney, a satisfaction of the mortgage acknowledging full payment of any indebtedness under the promissory note remaining unpaid at the death of Levas. It was further alleged that, pursuant to the agreement, Levas and Dewey went to Hardy's office on November 26th, and Levas caused to be written and signed a letter (referred to later) and the satisfaction of mortgage.

Defendants alleged that, at said time and place, defendants instructed Hardy to prepare the wills, which he did, and which were executed December 2, 1947. It is further alleged that Levas died December 5, 1947.

Plaintiffs admitted the date of Levas' death, but denied all of the remainder of the affirmative matter.

At the trial, the plaintiffs offered and had admitted in evidence the note and mortgage, and then rested. The note for $3,200, dated July 7, 1945, contained endorsements of monthly payments of $30 up to and including November 3, 1947, leaving a balance due of $2,360.

The letter, written on the stationery of Warren Hardy, attorney, follows:

"Mr. Warren Hardy                    November 26, 1947
1222 Northern Life Tower ·
Seattle, Washington
Dear Sir:

"It is my intention and wish that if any money remains unpaid on the note dated July 7, 1945 and signed by Edna E. Dewey and Walter H. Dewey, husband and wife, in the sum of $3,200.00 at the time of my death, that said indebtedness be cancelled.

"To carry this into effect, I have this day, executed a release of the real estate mortgage from Edna E. Dewey and Walter H. Dewey, husband and wife, to me dated July 7, 1945 and given to secure the payment of said note. Said mortgage having been filed for record August 3, 1945 under auditor's file No. 3490808, recorded Volume 20, 28 of Mortgages, Page 667, covering the real property therein described.

"Upon satisfactory proof of my death, you are to deliver the satisfaction of mortgage to Walter H. Dewey and Edna E. Dewey, his wife, and the said installment note shall thereupon become fully paid and said mortgage released.

"Very truly yours,
JOHN LEVAS [signed]"

The following is the satisfaction of mortgage:

"3768463 SATISFACTION OF MORTGAGE Vol. 2323 Page 211

"I, JOHN LEVAS, of Seattle, Washington, the mortgagee in that certain mortgage dated July 7th, 1945, in which Edna E. Dewey and Walter H. Dewey, are the mortgagors, recorded August 3rd, 1945, under Auditor's File Number 3490808, and recorded in Volume 2028 of Mortgages Page 667, covering the following described real property situated in King County, Washington, to-wit:

"Lot Thirteen (13) and the South 15 feet of Lot Fourteen (14) Block Three (3) Southern Pacific Supplemental Addition to West Seattle, according to plat recorded in Volume 3 of Plats, page 37, records of said county,

to secure the payment of $3,200.00, do hereby certify that said mortgage indebtedness has been paid in full and do hereby release and satisfy said mortgage.

"Dated at Seattle, Washington, this 26th day of November, 1947.

JOHN LEVAS [signed]

STATE OF WASHINGTON }
COUNTY OF KING        } SS.

"THIS IS TO CERTIFY, that on this 26th day of November, 1947, before me, Warren Hardy, a Notary Public, personally appeared JOHN LEVAS, to me known to be the individual described in and who executed the within instrument and acknowledged to me that he signed and executed the same as his own free and voluntary act and deed for the uses and purposes therein stated.

"WITNESS my hand and official seal this 26th day of November, 1947.

SEAL

WARREN HARDY [signed]
Notary Public in and for the
State of Washington, residing
at Seattle."

This document was filed for record in the office of the county auditor of King county on January 29, 1948, at the request of Walter H. Dewey.

Mr. Hardy was sworn and testified as to the transaction which occurred in his office between Mr. Dewey, himself, and the deceased, on November 26th. He also testified as to preliminary events bearing on the transaction. Mr. Hardy was the only attorney representing the defendants in the entire proceedings, although he knew in advance of the trial that his testimony would be vital in establishing the matters set forth in the affirmative defense.

We held in *In re Torstensen's Estate*, 28 Wn. (2d) 837, 184 P. (2d) 255, that an attorney violated the code of ethics in acting as attorney in a will contest where it appears that he had acted as her attorney for a long time, that he drew the will, signed it as a witness, accepted the position of executor, and then testified as a witness in the trial of the case; and because of such violation, his evidence cannot be given much credit. See, also, *Interior Woodwork Co. v. Buhler-Larsen*, 207 Wis. 1, 238 N. W. 822. In the case at bar, we feel unable to give much credit to the testimony of Mr. Hardy. We believe that such practice should be discouraged by the trial courts.

For the guidance of the bench and bar, we wish to reiterate our strict adherence to Canon XIX of the Canons of Ethics as adopted by the bar of this state.

The trial court was of the opinion that Mr. Levas intended that, at the moment of his death, the debt should be extinguished, and entered a judgment dismissing plaintiffs' action.

We are confronted with two problems in this appeal. Was there a valid, enforcible contract under which Levas agreed to waive payment of the balance of the promissory note

upon his death, in return for defendants executing wills providing for acceleration of the note payments in the event both defendants predeceased Levas? Or, did the delivery of the satisfaction of the mortgage, together with the letter of instructions, constitute a valid gift to defendants of any balance due upon the death of the mortgagee (Levas)?

Appellants assign error to the admission of the testimony of Warren Hardy on the ground that such testimony concerns transactions with a deceased person and is barred under Rem. Rev. Stat., § 1211 [P.P.C. § 38-3].

In order to determine whether or not Hardy was an interested party, it is necessary to know what agreement, if any, he had with the Deweys as to the compensation he should receive for the case. If his fee was contingent upon the success of the litigation, he was an interested party and his testimony inadmissible. However, if the agreement was that he should charge a reasonable fee, even though it might be greater if successful than if not, he would not be an interested party. *In re Hilbert's Estate,* 14 Wn. (2d) 475, 128 P. (2d) 647. Because there is no testimony regarding the compensation Hardy was to receive, we will assume it was not barred by § 1211, although for reasons stated elsewhere in this opinion we are giving it little weight.

The first question we shall consider is the contract alleged in the answer. The only testimony introduced in support of the contract is that of attorney Hardy. While it is true that the satisfaction of mortgage and the letter of instructions conform to the agreement as testified to by Hardy, there is nothing in either exhibit reciting that either of them was drawn pursuant to any agreement. Nor is any reference made to the execution of any wills by the respondents. The wills merely recite that, in the event the testator dies subsequently to or at the same time as the other spouse, the note and mortgage are to be satisfied out of a particular fund. In passing, it might be noted that the answer recites that the wills were executed on December 2nd, while the date on the wills is December 3rd, two days before decedent's death.

■ We are satisfied from a reading of the record that there is no evidence to sustain a finding that decedent and the Deweys entered into the contract set forth in the answer, there also being a serious doubt in our minds that the alleged contract could stand the test of mutuality.

■ The affirmative defense in the answer rests upon an alleged contract. However, at the trial, evidence was introduced without objection that decedent intended the satisfaction of mortgage to operate as a gift. We will deem the pleadings amended to conform to the proof. The next question then is whether there was a gift or not. If a gift, was it a gift *inter vivos* or a testamentary disposition?

■ A gift *inter vivos* is a gift between living persons. To operate, it must become effective during the donor's lifetime, immediately and irrevocably, and must divest the donor of all present control over it. It is a gift executed, and no further act of the parties and no other contingency, such as death, is necessary to give it effect. 24 Am. Jur. 732, Gifts, § 4. The rule is stated in *Basket v. Hassell*, 107 U. S. 602, 27 L. Ed. 500, 2 S. Ct. 415:

"The point, which is made clear by this review of the decisions on the subject, as to the nature and effect of a delivery of a chose in action, is, as we think, that the instrument or document must be the evidence of a subsisting obligation and be delivered to the donee, so as to vest him with an equitable title to the fund it represents, and to divest the donor of all present control and dominion over it, absolutely and irrevocably, in case of a gift *inter vivos*, but upon the recognized conditions subsequent, in case of a gift *mortis causa*; and that a delivery which does not confer upon the donee the present right to reduce the fund into possession by enforcing the obligation, according to its terms, will not suffice. A delivery, in terms, which confers upon the donee power to control the fund only after the death of the donor, when by the instrument itself it is presently payable, is testamentary in character, and not good as a gift."

Respondents cite and rely strongly upon *In re Kirkpatrick's Estate*, 140 Wash. 452, 249 Pac. 980, to sustain their theory of a present gift *inter vivos*. There, the donor ex-

ecuted deeds to his sister and delivered them to a third person to control until his death and then deliver to the grantee. It will be noted that in the cited case there was a present gift of something of value. The donor gave his sister the entire reversionary interest in the property, and placed it beyond his control.

In the case at bar, the decedent attempted to give respondents any debt remaining at his death (there being only a possibility of respondents receiving anything), while retaining full control of the debt. The cited case does not sustain the trial court's holding. Here, the note and mortgage were retained by Mr. Levas. There was no immediate and irrevocable gift of the debt. It was therefore not a gift *inter vivos*.

Neither was it a gift *causa mortis*, which can only arise in contemplation of death from present illness or some impending peril. 24 Am. Jur. 733, Gifts, § 5. This transaction was intended to give the Deweys any balance remaining due on the note at Mr. Levas' death.

It was not a gift, but an attempt to make a testamentary disposition of the unpaid balance of the debt. To make a testamentary disposition in this state, there must be a compliance with the provisions of Rem. Rev. Stat., § 1394 [P.P.C. § 219-1], *et seq.* The transaction was therefore not a valid testamentary disposition of the debt.

The judgment is reversed, and remanded with directions to grant judgment to appellants as prayed for in their complaint.

It is noted that appellants asked in their complaint for a five-hundred-dollar attorneys' fee. No testimony was introduced as to the reasonable value of the services of the attorneys. The trial court shall adjudge the amount of attorneys' fees and may take additional testimony, if it desires, to determine such amount.

JEFFERS, C. J., ROBINSON, SIMPSON, and GRADY, JJ., concur.

ON REHEARING.

[*En Banc.* January 19, 1950.]

HAMLEY, J.—The judgment in this case was reversed on appeal to this court. A rehearing was granted, and the cause was argued to the court sitting *En Banc.*

The majority of the court has arrived at a conclusion different from that of the Department. The facts are fully set out in the Departmental opinion, and will be only briefly summarized here.

This is an action to recover the balance due on a promissory note, and to foreclose a real-estate mortgage given to secure the note. The action was brought by the executors of the estate of John Levas, the promisee and mortgagee in this transaction. The defense was that the balance due on the note had been forgiven and the mortgage satisfied, pursuant to an oral agreement between the parties which had been fully executed.

The substance of the claimed agreement was that Levas promised that, in the event of his own death, the mortgage would be satisfied, acknowledging full payment of any indebtedness then remaining under the note, in consideration of respondents' promise to execute their wills providing that, upon the death of both respondents, Levas should be paid in cash, out of the proceeds of respondents' life insurance, any balance then remaining due on the note. The agreement was alleged to have been made in attorney Warren Hardy's office on November 26, 1947. On the same day, Levas is alleged to have executed and delivered to Mr. Hardy a satisfaction of mortgage and a letter of instructions authorizing Mr. Hardy to deliver the satisfaction of mortgage to respondents upon satisfactory proof of Levas' death. It is further alleged that, on December 3, 1947, respondents executed wills in fulfillment of their promise. Levas died on December 5, 1947.

At the trial, respondents were barred, under Rem. Rev. Stat., § 1211 [P.P.C. § 38-3], from testifying as to the transaction with decedent. The only other person present at that time was Mr. Hardy, who represented respondents as their

attorney throughout this case until the filing of the petition for rehearing in this court. Mr. Hardy was sworn as a witness. He identified and put in evidence the satisfaction of mortgage executed by Levas on November 26, 1947, and the letter of instruction of the same date from Levas to Hardy. These documents are set out in full in the Departmental opinion. Mr. Hardy also identified and put in evidence the wills executed by respondents on December 3, 1947. Each of the wills provided that, in case of the death of the other spouse prior to, simultaneously with, or within twenty-four hours after the death of the maker of the will, all property was to go to LeRoy H. Peth, Jr., subject to the condition that Peth should pay to Levas in cash, out of the proceeds of insurance policies, any balance which should remain unpaid on the Levas note and mortgage.

None of these documents specifically refers to any agreement between Levas and respondents. Mr. Hardy testified as to such oral agreement and stated that the documents referred to above were executed pursuant to that agreement. A notation which Mr. Hardy made in an office record book when the parties were in his office, which notation was introduced as an exhibit, tends to substantiate Mr. Hardy's testimony. Mr. Hardy's direct examination was very brief, occupying but nine pages of the statement of facts. His cross-examination was also very brief, occupying only two pages. There was no cross-examination as to the transaction in Mr. Hardy's office when the oral agreement was alleged to have been reached, or as to the later execution of the wills in purported compliance with the agreement. The cross-examination was limited to the manner in which the agreement was called to the attention of the executor of the estate after Levas' death.

Mr. Hardy's testimony was supported, to some extent, by witness J. Willis Jones, who told of a conversation he had with respondent Walter H. Dewey in which the transaction was discussed. Mr. Hardy's testimony was also supported to some extent by witness William E. Rueppell, who testified regarding a conversation he had with Levas. There

was no conflicting testimony with regard to the oral agreement or its execution.

Because of Mr. Hardy's position as attorney for respondents in this litigation it was held, in the Departmental opinion, that little credit could be given to his testimony. After thus discounting Mr. Hardy's testimony, it was held that there was no evidence to sustain a finding that decedent and the Deweys entered into the alleged oral contract. The Departmental opinion made reference to Canon XIX of the Canons of Ethics as adopted by the bar of this state, and several court decisions, including the decision of this court in *In re Torstensen's Estate*, 28 Wn. (2d) 837, 184 P. (2d) 255.

█ It is provided by statute, and by the rules for discipline of attorneys adopted by the board of governors of the state bar association and approved by this court, that the Code of Ethics of the American Bar Association shall be the standard of ethics for the members of the bar of this state. Rem. Rev. Stat., § 139-15 [P.P.C. § 273-45]; Rule XI (11) for the Discipline of Attorneys, 193 Wash. 93-a. Rule XI (11) provides that an attorney may be reprimanded, suspended, or disbarred for violation of the ethics of the profession. Canon XIX of the Canons of Professional Ethics, adopted by the American Bar Association on August 27, 1908, reads as follows:

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

It is clear that the portion of Mr. Hardy's testimony pertaining to the identification and execution of the satisfaction of mortgage, letter of instructions, and wills, being limited to formal matters, was unobjectionable under Canon XIX. These documents, together with the testimony of witnesses Jones and Rueppell, uncontradicted by any witness, come very near to establishing proof of the oral agreement and its execution.

■ We are not prepared to say, however, that this evidence, unsupported to any extent by Mr. Hardy's testimony as to the agreement, is sufficient to support the findings of fact. But we do believe that if any credence whatever is to be given to Mr. Hardy's testimony, the evidence is plainly adequate. Accordingly, we must hold for respondents, unless it is necessary to say that, under the circumstances, Mr. Hardy's testimony is entitled to no consideration. To say this would be to rule, in effect that he was not competent as a witness regarding such matters, and that the questioned testimony is wholly inadmissible. A rule wholly excluding the testimony of attorneys on such a ground would be contrary to the overwhelming weight of authority. See the exhaustive annotation in 118 A. L. R. 954; 6 Wigmore on Evidence (3rd ed.) 602, § 1911.

There is no doubt that Mr. Hardy's act in testifying as to the oral contract, without thereafter immediately withdrawing as counsel for respondents, was a violation of Canon XIX. *In re Torstensen's Estate, supra; Alexander v. Watson*, 128 F. (2d) 627; *Teats v. Anderson*, 358 Pa. 523, 58 A. (2d) 31; *Miller v. Urban,* 123 Conn. 331, 195 Atl. 193, 118 A. L. R. 951; *Fleming v. Donovan*, 324 Ill. App. 312, 58 N. E. (2d) 196; *Cuvelier v. Town of Dumont*, 221 Iowa 1016, 266 N. W. 517; *In re Henry's Estate*, 156 Kan. 788, 137 P. (2d) 222, modified on other grounds, 157 Kan. 471, 142 P. (2d) 717; *Snyder v. Hammer*, 180 Md. 690, 23 A. (2d) 653; and cases cited in the Departmental opinion.

However, we do not feel that the breach of ethics here was of such an aggravated nature as to necessitate penalizing Mr. Hardy's clients by rejecting their otherwise valid defense in this action. It was apparent before the trial that there would be no substantial conflict of evidence regarding the oral contract. The case was placed on the short trial calendar upon the affidavit of Mr. Hardy that "there is little dispute as to the facts in the case." Appellants state in their brief that the case was tried as a short trial case "in view of the many admissions of fact by both parties." As heretofore

indicated, no conflict in the testimony developed, and Mr. Hardy was not even cross-examined as to the oral contract.

Instead of contesting the facts as to the oral agreement, appellants sought to avoid them on the ground that Mr. Hardy's testimony was inadmissible in view of Rem. Rev. Stat., § 1211, relating to transactions with decedent. This contention was disposed of in the Departmental opinion.

Appellants made no contention at the trial, or in their motion for judgment notwithstanding the court's decision, that Mr. Hardy should not have testified or should have withdrawn as counsel after testifying, in view of Canon XIX. While we do not hold that such an objection is necessary in order for us to take cognizance of a breach of ethics, we believe the failure to object is an element to be considered when we are asked to wholly reject essential testimony. See *In re Cunningham's Estate,* 219 Minn. 80, 17 N. W. (2d) 85.

*In re Torstensen's Estate, supra,* involved a breach of Canon XIX far more aggravated in nature than we have here, and there were also other reasons for discounting the attorney's testimony, not present here. In that case, the attorney was also the executor of a $237,000 estate, which he sought to sustain by his testimony in a will contest, and accordingly he had a substantial pecuniary interest in the outcome. In the instant case, the attorney's only personal interest appears to be his fees as counsel, and there is no evidence that they were on a contingent basis. In the *Torstensen* case, the attorney was cross-examined at length, and our opinion stressed the evasive answers which he gave, indicating that they evidenced "the intense interest Mr. Miller had in the success of this litigation." In the instant case, there was no cross-examination of the attorney as to the oral contract and very little on any other point. In the *Torstensen* case, there was a direct conflict in the evidence on the point regarding which the attorney testified—the decedent's testamentary capacity. Seventeen witnesses testified that the decedent lacked testamentary capacity, and twenty-one witnesses, including the attorney, testified that

there was testamentary capacity. In the case before us, there was no testimony in conflict with that given by the attorney.

In the *Torstensen* case, we said that "we feel unable to give his [the attorney's] evidence much credit." The opinion does not indicate that the attorney's testimony was wholly ignored. It would also appear that, to the extent that the attorney's testimony was discounted, his evasive answers on cross-examination and his substantial pecuniary interest in the outcome of the litigation were important factors. Neither of those elements is involved in the instant case.

In view of the foregoing, it is our conclusion that the decision in *In re Torstensen's Estate* does not require us to reject completely the testimony of Mr. Hardy in this case. This view finds support in our decision in *Carey v. Powell*, 32 Wn. (2d) 761, 204 P. (2d) 193, involving a contract to devise real property. The attorney for the plaintiffs, who prevailed in that litigation, testified in support of their claim. We held that his testimony was entitled to consideration, saying:

"Some question was raised as to the propriety of Mr. Cunningham testifying, inasmuch as he had drawn the will and contract, and was one of the attorneys for respondents. Appellants cite *In re Torstensen's Estate*, 28 Wn. (2d) 837, 184 P. (2d) 255. Upon the last-cited case being brought to his attention, Mr. Cunningham withdrew as an attorney in this case. We do not think the facts in the instant case, in so far as the acts of Mr. Cunningham are concerned, are comparable with the facts in the *Torstensen* case, and we are of the opinion it was not improper for Mr. Cunningham to testify in this case."

The attorney in that case commendably withdrew from the litigation when *In re Torstensen's Estate* was called to his attention. Examination of the briefs in that case indicates that the attorney withdrew during the course of the trial, but stated that he would remain in court, and did so remain. In the instant case, *In re Torstensen's Estate* was not called to the attention of Mr. Hardy during the

course of the trial or afterwards. As before indicated, no objection to Mr. Hardy testifying was made on that ground. There was no assignment of error covering the point.

*In re Torstensen's Estate* is not cited in the brief filed by appellants prior to the Departmental hearing. The case apparently came to Mr. Hardy's attention for the first time during the oral argument before the Department, or when he read the Departmental opinion. We cannot say that he would not have promptly retired from the case had the matter been called to his attention.

In other recent cases, we have apparently given consideration to the testimony of attorneys involved in the litigation, without comment as to its propriety. For example, see *In re Hilbert's Estate,* 14 Wn. (2d) 475, 128 P. (2d) 647.

We desire to make it plain that our opinion here is not to be construed as receding in the least from the expression in the *Torstensen* case of our strong disapproval of the practices there condemned. It is simply that, under the particular circumstances of this case, we do not feel that the breach of ethics was of such nature as to require us to penalize respondents by wholly ignoring the essential testimony of Mr. Hardy. Dean Wigmore expressed something of the same view when he wrote, regarding this problem:

"Is it not strange, however, that Courts have sometimes been found ordering a new trial for counsel's breach of this rule of professional ethics? Why punish the innocent client?" 6 Wigmore on Evidence (3rd ed.) 606, § 1911.

Giving credence to Mr. Hardy's testimony, we are convinced that the evidence supports the findings of fact regarding the contract under the terms of which the debt sued upon was extinguished upon the death of Levas.

Appellants have also argued that the alleged contract does not stand the test of mutuality. We do not agree. If, upon the occasion of the meeting in Mr. Hardy's office, decedent promised that he would execute a satisfaction of mortgage and a letter of instructions embodying the terms agreed upon, in consideration of respondents' *promise* to execute their wills in the form agreed upon, there was full mutuality of contract at that time—a binding promise for a

binding promise. *Mowbray Pearson Co. v. E. H. Stanton Co.,* 109 Wash. 601, 187 Pac. 370, 190 Pac. 330; 17 C. J. S. 445, Contracts, § 100. If, on the other hand, decedent executed and delivered the instruments to Mr. Hardy upon *condition* that respondents would execute the wills, there was mutuality and a binding contract when respondents executed the wills prior to decedent's death. It is well settled that a promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee. 17 C. J. S. 448, Contracts, § 100 c.; 12 Am. Jur. 609, Contracts, § 114.

The execution of the wills constituted valid consideration to support the contract, for they provided for acceleration of payment on the note in the case of the death of both respondents, a privilege to which Levas was not otherwise entitled. 12 Am. Jur. 583, Contracts, § 89. The fact that wills are revokable is immaterial. These wills were not revoked.

The Departmental opinion is not adhered to. The judgment will be affirmed.

BEALS, ROBINSON, MALLERY, HILL, DONWORTH, and GRADY, JJ., concur.

SIMPSON, C. J., dissents.

SCHWELLENBACH, J. (dissenting)—I adhere to the Departmental opinion.